# DEWEY v. WEST FAIRMONT GAS COAL COMPANY.

# WEST FAIRMONT GAS COAL COMPANY v. DEWEY.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF WEST VIRGINIA.

Submitted November 9, 1887. — Decided November 21, 1887.

A New York corporation contracted with a partnership consisting of citizens of West Virginia, to furnish a specified quantity of coal within a fixed time at an agreed rate. After delivery of a portion of the coal, the partnership refused to receive more, whereupon the corporation sued the partners in a state court of West Virginia to recover damages for a breach of the contract. On the motion of the defendants this action was removed from the state court to the Circuit Court of the United States, on the ground that the parties were citizens of different States. The partners then, in conformity with the provisions of a statute of West Virginia which authorizes a creditor, before obtaining judgment, to institute any suit to avoid a conveyance of the estate of his debtor which he might institute after obtaining judgment, and to have the relief in respect to said estate which he would be entitled to after judgment, filed a bill in equity in the Circuit Court of the United States to set aside an assignment of the property of the corporation as fraudulent, and to subject that property in the hands of the assignee to the payment of their debt. It was objected to this bill that the court was without jurisdiction, as the assignee, who was one of the respondents, was a citizen of West Virginia, of which the complainants also were citizens. *Held*, that the objection was not well taken, the equity suit being an exercise of jurisdiction in the Circuit Court ancillary to that which it had already acquired in the action at law, and which it might entertain according to the rule in *Krippendorf* v. *Hyde*, 110 U. S. 276, and *Pacific Railroad Co.* v. *Missouri Pacific Railway Co.*, 111 U. S. 505.

From a careful examination of all the evidence in this case, the court is satisfied with the action of the Circuit Court dismissing the bill, and the cross-bill as dependent upon the bill.

IN equity to set aside an assignment by an insolvent debtor as fraudulent, and to subject the assigned property to the payment of the complainants' debt. The respondents filed a cross-bill.

The decree dismissed the bill for want of equity and the cross-bill as dependent upon it. The case is stated in the opinion.

*Mr. Daniel Lamb, Mr. William H. Hearne,* and *Mr. Henry M. Russell,* for Dewey and others cited: *Railway Co.* v. *Railway Co.,* 111 U. S. 506; *Great Falls Mfy. Co.* v. *Henry,* 25 Grattan, 575; *Krippendorf* v. *Hyde,* 110 U. S. 276; *Ragsdale* v. *Hagy,* 9 Grattan, 409; *Jones* v. *Andrews,* 10 Wall. 327; *Jaynes* v. *Brock,* 10 Grattan, 211; *Lindsay* v. *Jackson,* 2 Paige, 581; *Taylor* v. *Okey,* 13 Ves. 180; *Gay* v. *Gay,* 10 Paige, 369; *Kelsey* v. *Hobby,* 16 Pet. 269; *Hudson* v. *Kline,* 9 Grattan, 379; *Heilbutt* v. *Hickson,* L. R. 7 C. P. 438; *Foot* v. *Bentley,* 44 N. Y. 166; *Swett* v. *Shumway,* 102 Mass. 365; *Stoops* v. *Smith,* 100 Mass. 63; *Kellogg Bridge Co.* v. *Hamilton,* 110 U. S. 108; *Sheppard* v. *Pybus,* 3 Man. & Gr. 868; *Jones* v. *Just,* L. R. 3 Q. B. 197; *Hogins* v. *Plympton,* 11 Pick. 97; *Chapin* v. *Dobson,* 78 N. Y. 74; *Gerst* v. *Jones,* 32 Grattan, 518; *White* v. *Miller,* 71 N. Y. 118; *S. C.* 78 N. Y. 393; *Wolcott* v. *Mount,* 9 Vroom (38 N. J. L.), 496; *Randall* v. *Newson,* 2 Q. B. D. 102.

*Mr. William P. Hubbard* and *Mr. James Morrow, Jr.,* for the West Fairmont Gas Coal Co. cited: 2 Benj. on Sales, 4th Am. ed., page 916, notes and cases cited; *Phillips, &c., Construction Co.* v. *Seymour,* 91 U. S. 646, 652; *Davis* v. *Fish,* 1 G. Greene (2 Iowa), 447; *S. C.* 48 Am. Dec. 387; *Hedden* v. *Roberts,* 134 Mass. 38; *Chanter* v. *Hopkins,* 4 M. & W. 399; *Ollivant* v. *Bayley,* L. R. 5 Q. B. 288; *Mason* v. *Chappell,* 15 Grattan, 572; *Port Carbon Iron Co.* v. *Groves,* 68 Penn. St. 149; *Brown* v. *Edgington,* 2 Man. & Gr. 279; *Hoe* v. *Sanborn,* 21 N. Y. 552; *S. C.* 78 Am. Dec. 163; *Cunningham* v. *Hall,* 4 Allen, 268, 274; *Archdale* v. *More,* 19 Ill. 565; *Whitaker* v. *Eastwick,* 75 Penn. St. 229; *Kirk* v. *Nice,* 2 Watts, 367; *Sands* v. *Taylor,* 5 Johns. 395; *S. C.* 4 Am. Dec. 374; *Kain* v. *Old,* 2 B. & C. 627; *Osborn* v. *Gantz,* 60 N. Y. 540; *Robinson Works* v. *Chandler,* 56 Ind. 575; *Gardiner* v. *Gray,* 4 Campb. 144; *Fisher* v. *Samuda,* 1 Campb. 190; *Couston* v. *Chapman,* L. R. 2 Sc. App. 250; *Hargous* v. *Stone,* 5 N. Y. (1 Seld.) 73, 86; *McCormick* v. *Sarson,* 45 N. Y. 265; *Dounce* v. *Dow,* 64

N. Y. 411; *Reed* v. *Randall*, 29 N. Y. 358; *S. C.* 86 Am. Dec. 305; *Holden* v. *Clancy*, 58 Barb. 590; *Warren Glass Works Co.* v. *Keystone Coal Co.*, 65 Maryland, 547.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In October, 1872, a contract was entered into between the firm of Dewey, Vance & Company and the West Fairmont Gas Coal Company, the terms of which are stated in a letter from the former to the president of the coal company, dated October 7, 1872, as follows: "We beg to ratify our verbal agreement of October 4th, by which you are to deliver us until July, in 1873, an average of three cars of coke per day, at six cents per bushel of 41 pounds, we to settle for same by our note of 90 days from the 1st of each month for the previous month's delivery." This was acknowledged as an acceptance of a previous offer in identical terms by a letter from the president of the coal company to Dewey, Vance & Company. Under this contract the coal company were bound to deliver 681 car-loads as ordered, equivalent to 424,944 bushels, which at the contract price would amount to $25,496.64. From the date of the contract to November 30, 1873, the coal company delivered in all 246 car-loads, which had been ordered and were received and paid for according to the terms of the contract, the period during which deliveries were to have taken place having been extended by mutual consent. Dewey, Vance & Company refusing to order or receive any more, the coal company, on January 17, 1877, brought an action at law against them in the Circuit Court of Ohio County, West Virginia, for damages for the breach of the contract. The defendants in that action caused it to be removed from the state Court to the Circuit Court of the United States for the District of West Virginia on June 7, 1877, on the ground that the parties were citizens of different States, the West Fairmont Gas Coal Company, the plaintiff, being a corporation of the State of New York, and the defendants citizens of West Virginia and Ohio. Thereupon, on October 3, 1877, the surviving partners of the firm of Dewey, Vance & Company filed the

present bill in equity against the West Fairmont Gas Coal Company, the plaintiff in the action at law, and the West Fairmont and Marion Consolidated Gas Coal Company, a corporation organized under the laws of West Virginia, alleging that under the contract of October 4, 1872, the sale of coke was by sample, the quality of which was to be equal to that of a certain trial lot previously tested, accompanied by an implied warranty that the coke to be delivered under the contract should also be fit and suitable for the purpose of being used in the furnace of Dewey, Vance & Company for making pig-iron; that in point of fact the coke actually delivered under the contract was not equal to the quality of the sample, and was not fit for the purposes for which it was to be used; that in consequence thereof the complainants had ceased and refused to order or receive any more than that delivered and paid for, and that by reason of the bad quality of the coke actually received and used they had suffered a large amount of damages; that the West Fairmont Gas Coal Company in the meantime had become and was insolvent, and that they had made a fraudulent assignment of their property to their codefendant, the West Fairmont and Marion Consolidated Gas Coal Company. The prayer of the bill was that the amount of damages sustained by the complainant might be ascertained, that the assets of the West Fairmont Gas Coal Company, so fraudulently assigned, be subjected to the payment thereof, and that in the meantime all proceedings in the action at law brought by the West Fairmont Gas Coal Company should be stayed.

The right to maintain such a creditor's bill is based upon the code of West Virginia, c. 133, § 2, which provides that: "A creditor, before obtaining a judgment or decree for his claim, may institute any suit to avoid a gift, conveyance, assignment, or transfer of or charge upon the estate of his debtor, which he might institute after obtaining such judgment or decree, and he may, in such suit, have all the relief in respect to said estate which he would be entitled to after obtaining a judgment or decree for the claim which he may be entitled to recover."

To this bill the defendants in the first instance objected, by

way of plea and demurrer, for want of jurisdiction in the court, on the ground that one of the defendants, the West Fairmont and Marion Consolidated Gas Coal Company, was a citizen of the State of West Virginia, of which also a portion of the complainants were citizens. This objection, however, is not well taken. The suit in equity was an exercise of jurisdiction on the part of the Circuit Court ancillary to that which it had already acquired in the action at law, which it might well entertain according to the rule adjudged in *Krippendorf* v. *Hyde*, 110 U. S. 276, and *Pacific Railroad Co.* v. *Missouri Pacific Railway Co.*, 111 U. S. 505.

The defendants having answered, denying the equity of the bill, set up their right to recover damages for the alleged breach of the contract on the part of Dewey, Vance & Company, in refusing to receive the remainder of the coke deliverable under the contract, by way of cross-bill, in which they sought a decree for the amount thereof. Issues having been made upon the bill and cross-bill, the cause was heard upon its merits, when the Circuit Court rendered a decree dismissing the bill for want of equity, and the cross-bill, with costs, to the original defendants as dependent thereon. From this decree an appeal is prosecuted by the original complainants, and also by the defendants, by way of cross-appeal, from so much as dismisses their cross-bill.

From a careful examination of all the evidence in the cause, we are satisfied with the conclusions of the Circuit Court. We find as matter of fact that the sale of coke was not by sample. A trial lot of 34 car-loads, prior to the making of the contract, was furnished and used, the complainants being satisfied with it, but there was no agreement, either express or implied, that all deliveries under the contract should be equal to it in quality. The object of the test evidently was to determine, on the part of the complainants for themselves, whether they were willing to run the risk of using coke to be manufactured by the coal company from the slack of their mines at the price offered. The coke which was subsequently furnished under the contract was used by the complainants and paid for according to the contract without objection, except as to a lot

furnished in December, 1872, which was complained of as being inferior. On investigation it turned out to have been made from material taken from a slack pile outside of the mine which had been for some time exposed, and had become unfit for the purpose. Thereafter no material was used except the fresh slack taken from the inside of the mines, and deliveries continued to be made as ordered until the last which took place in November, 1873. There was no warranty expressed, nor can any be reasonably implied from the circumstances, that the coke under the contract should be suitable for use in the furnace for making pig-iron. On the contrary, it was expressly understood that- it would not be suitable for that purpose by itself. The only question to be determined was whether it could be used in combination with Connellsville coke, which was the standard for that purpose, and if so, in what proportions; to determine this was the object of testing the trial lot. The complainants continued to use it, as already stated, from time to time, without objection or complaint, paying for what they received according to the terms of the contract, and not at any time giving notice of any intention to refuse the further performance of the contract, although ceasing to give any orders after November, 1873. On November 28, 1873, the coal company, in a letter from its president to Dewey, Vance & Company, asked for the reason for the order to discontinue shipping, in reply to which, on December 4, 1873, Dewey, Vance & Company wrote: "Yours of the 28th inst. was duly received. We were accumulating stock, and stopped shipments from Fairmont and curtailed from Connellsville; have no definite idea at what time we shall again need." No further communications appear to have taken place between the parties until the beginning of the action at law.

We think the Circuit Court did not err upon the merits in dismissing the complainants' bill, and, as the cross-bill was dependent upon it and sought no relief purely equitable, it was also properly dismissed, with costs to the complainant therein, thereby remitting it to its remedy in the pending action at law.

*The decree of the Circuit Court is accordingly affirmed.*