THOMAS, HEAD AND GREISEN EM-
PLOYEES TRUST; Ronald E. Greisen,
and; Henry P. Head, Plaintiffs–Appel-
lees,

v.

Jack B. BUSTER; Janice Sue Buster, aka
Janice Sue Johnson; Horizons West,
Inc., an Oregon Corporation; Scorpio,
Inc., an Alaska Corporation; Western
Investment Trust; Susan Benedict,
Trustee, of the Western Investment
Trust, Defendants–Appellants.

THOMAS, HEAD AND GREISEN EM-
PLOYEES TRUST; Ronald E. Greisen,
and; Henry P. Head, Plaintiffs–Appel-
lees,

v.

Jack B. BUSTER; Janice Sue Buster, aka
Janice Sue Johnson; Horizons West,
Inc., an Oregon Corporation; Scorpio,
Inc., an Alaska Corporation; Western
Investment Trust; Susan Benedict,
Trustee, of the Western Investment
Trust, Defendants,

Westwood Acres, Intervenor–Appellant.

Nos. 94–35872, 95–35619.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 1996.

Decided Sept. 19, 1996.

G. Jefferson Campbell, Jr., Medford, Oregon, for defendants-appellants.

A. Michael Zahare and Thomas L. Hause, Matthews & Zahare, P.C., Anchorage, Alaska, for plaintiffs-appellees.

A. Lee Petersen, Anchorage, Alaska, for intervenor-appellant.

Before: LAY,* CHOY and LEAVY, Circuit Judges.

LAY, Senior Circuit Judge:

In *Thomas, Head & Greisen Employees Trust v. Buster*, 24 F.3d 1114 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 935, 130 L.Ed.2d 881 (1995), this court affirmed a judgment of $142,745.71 against Jack Buster and others not parties to this appeal under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461. The district court ruled in favor of Thomas, Head & Greisen Employees Trust, Ronald Greisen, and Henry Head (collectively, "Thomas, Head") upon finding that Buster breached his fiduciary duties to Thomas, Head in the sale of certain deed-of-trust notes.

The initial appeal (No. 94–35872) arises out of supplementary proceedings in which Thomas, Head has attempted to execute on its judgment against Buster. In February 1993, Thomas, Head amended its complaint to join as defendants Janice Sue Buster, a/k/a Janice Sue Johnson, Horizons West, Inc., Scorpio, Inc., Susan Benedict, trustee of the Western Investment Trust (collectively, "the Johnson parties"), and others not party to this appeal. The amended complaint alleges that Buster fraudulently transferred various properties to the Johnson parties in an effort to avoid payment of the judgment. The district court[1] denied the Johnson parties' motion to dismiss the supplementary proceeding for lack of jurisdiction and subsequently entered a preliminary injunction freezing certain assets and requiring Buster and the Johnson parties to deposit $125,000 into the court registry. When Buster and the Johnson parties failed to deposit the money or to show cause for their failure to do so, the court held them in contempt, declared them in default, and later entered default judgment against them on Thomas, Head's fraud-

---

* Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

1. The Honorable James A. von der Heydt, presiding.

ulent conveyance claims. Buster and the Johnson parties appeal the default judgment against them.

The above appeal has been consolidated with a second appeal (No. 95–35619) by Westwood Acres ("Westwood"), a limited partnership in which Buster is the general partner. Westwood attacks the validity of the default judgment as it relates to its property. At the time of the default judgment, Westwood was not a party to the supplementary proceedings. Shortly thereafter, however, the magistrate judge[2] entered an order, pursuant to the default judgment against Buster and the Johnson parties, appointing a receiver to freeze Westwood's bank accounts and distributions to prevent the dissipation of Buster and the Johnson parties' assets. Westwood moved to intervene and to vacate or modify the order appointing a receiver. The magistrate judge modified the order, and whether the modification or the underlying receivership was proper is not an issue before us in this appeal. Following notice of the sale of Buster's limited partnership interest in Westwood, however, Westwood made another motion, pursuant to Fed.R.Civ.P. 60(b)(4), for relief from the default judgment. The district court[3] denied the Rule 60(b)(4) motion, and Westwood appeals its denial.

## I

Thomas, Head commenced this supplementary proceeding, alleging that Buster had fraudulently conveyed his assets to the Johnson parties in violation of Alaska law. Buster and the Johnson parties assert that, under Fed.R.Civ.P. 69(a) and the Alaska procedure it incorporates, a judgment creditor must bring an independent action in state court to

set aside the postjudgment fraudulent conveyances of a judgment debtor. Rule 69(a) provides in relevant part:

> The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

### Alaska Supplementary Procedure

The Johnson parties and Buster urge that Alaska R.Civ.P. 69 does not permit judgment creditors to maintain supplementary fraudulent conveyance proceedings against nonparties to the underlying action.[4] Although Alaska R.Civ.P. 69 does not expressly authorize postjudgment fraudulent conveyance actions, Alaska Rule 69(c) provides that "the court may make an order restraining the judgment debtor from selling, transferring, or in any manner disposing of any of his property liable to execution pending the proceeding." Alaska procedure thus permits the use of postjudgment orders to *prevent* fraudulent conveyances. Since Federal Rule 69(a) is in substance a choice-of-law provision not "meant to put the judge into a procedural straitjacket, whether of state or federal origin," *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir.1993), we think "[t]he procedure followed here . . . accord[ed] with the spirit of the Rules and . . . [was] a sufficiently close adherence to state procedures." *See Chambers v. Blickle Ford Sales, Inc.*, 313 F.2d 252, 256 (2d Cir. 1963).[5]

---

2. The Honorable John D. Roberts.

3. The Honorable James K. Singleton, presiding.

4. Under Alaska law, transferees are indispensable parties in actions to recover fraudulent conveyances. *Sylvester v. Sylvester*, 723 P.2d 1253, 1259 (Alaska 1986) ("Both longstanding common law and cases arising under comparable versions of [Alaska's] Civil Rule 19 hold a grantee of an alleged fraudulent conveyance indispensable to a proceeding to strike the transfer."). Thus, Thomas, Head was required to join the Johnson parties in order to raise its fraudulent conveyance claims.

5. Buster and the Johnson parties rely on two Alaska cases, *First National Bank v. Enzler*, 537 P.2d 517 (Alaska 1975), and *Blumenstein v. Phillips Insurance Center, Inc.*, 490 P.2d 1213 (Alaska 1971), in support of their argument that fraudulent conveyance claims may not be raised in supplementary proceedings. These cases, however, do not support their contention; they simply illustrate fraudulent conveyance claims raised in ordinary, nonsupplementary proceedings under Alaska law.

The Alaska Supreme Court has twice upheld a trial court's exercise of jurisdiction over supplementary proceedings not expressly authorized by Alaska Rule 69. In *Keltner v. Curtis,* 695 P.2d 1076 (Alaska 1985), the judgment creditor sought to execute on property within the judgment debtor's possession. Two third parties filed claims to the property under Alaska Stat. § 09.35.130, which delineates the circumstances in which property levied upon by a third party may be retained by its possessor. The trial court held an evidentiary hearing to resolve the ownership dispute. The Alaska Supreme Court upheld the lower court's jurisdiction, reasoning that, although § 09.35.130 did not grant the court authority to determine title to the property, it had inherent power to do so because the ownership determination was "reasonably necessary to the fair administration of justice." *Id.* at 1079 n. 4.

Similarly, in *Great Western Savings Bank v. George W. Easley Co.,* 778 P.2d 569 (Alaska 1989), the trial court entered an order subordinating a construction lender's deed of trust to a general contractor's mechanics' lien. On appeal, the Alaska Supreme Court ruled that, because it was affirming a money judgment against the lender, "the order of subordination can be viewed as an order in aid of collection of the judgment which is within the inherent power of the court." *Id.* at 581. In a footnote to this passage, the court stated that " '[a] court of equity has power to entertain an action which has for its purpose the enforcement of a judgment in order that complete justice may be done to the parties in interest as the exigencies of the case or the interests of justice may require.' " *Id.* at 581 n. 12 (quoting *Shields v. Thomas,* 59 U.S. (18 How.) 253, 262, 15 L.Ed. 368 (1855)).

Buster and the Johnson parties note that the third parties in *Keltner* voluntarily filed their ownership claims with the court, and that the subordination of the deed of trust to the mechanics' lien in *Great Western* involved the original parties. We do not find those distinctions dispositive. *Keltner* and *Great Western* together suggest that the Alaska Supreme Court approves of a broad exercise of jurisdiction over third-party claims as "the exigencies of the case or the interests of justice may require." *Great Western,* 778 P.2d at 581 n. 4 (quotation omitted). We are thus persuaded that Alaska courts would permit Thomas, Head to bring its fraudulent conveyance claims in a supplementary proceeding such as the one presented to the district court.

*Subject Matter Jurisdiction*

 We still must satisfy ourselves, however, given the posture of this case, that the district court had federal subject matter jurisdiction over the proceedings involving the Johnson parties, who were not parties to the original action or judgment, but were impleaded by Thomas, Head and joined in the supplementary proceedings. There can be little question that federal courts generally possess the power to protect their judgments by setting aside fraudulent conveyances of the judgment debtor. *See Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,* 339 U.S. 684, 694–95, 70 S.Ct. 861, 867–68, 94 L.Ed. 1206 (1950) (federal court's power "to protect its jurisdiction from being thwarted by a fraudulent transfer ... applies equally whether it is concerned with executing its judgment or authorizing an attachment to secure an independent maritime claim"); *Dewey v. West Fairmont Gas Coal Co.,* 123 U.S. 329, 333, 8 S.Ct. 148, 150, 31 L.Ed. 179 (1887). This power derives from the long-recognized principle that a federal court may assert authority over non-federal claims "when necessary to give effect to the court's judgment." *Finley v. United States,* 490 U.S. 545, 551, 109 S.Ct. 2003, 2008, 104 L.Ed.2d 593 (1989) (citing *Local Loan Co. v. Hunt,* 292 U.S. 234, 239, 54 S.Ct. 695, 696–97, 78 L.Ed. 1230 (1934), and *Julian v. Central Trust Co.,* 193 U.S. 93, 112–14, 24 S.Ct. 399, 407–08, 48 L.Ed. 629 (1904)).[6] In the pres-

---

**6.** In *Local Loan,* the Court stated:

> That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled. And this, irrespective of whether the court would have jurisdiction if the proceeding were an original one. The proceeding being ancillary and dependent, the

ent case, however, there is no diversity of citizenship between the Johnson parties and Thomas, Head. As such, the Johnson parties challenge the district court's ancillary jurisdiction over them.

In *Peacock v. Thomas*, —— U.S. ——, —— – ——, 116 S.Ct. 862, 867–69, 133 L.Ed.2d 817 (1996), the Supreme Court held that, absent an independent basis for federal jurisdiction, a new defendant may not be joined in a supplementary proceeding to pierce the corporate veil. The Court reasoned that federal district courts do not possess ancillary jurisdiction over such claims where the judgment creditor is attempting to establish the new defendant's liability for the original judgment. *Id.* at —— – ——, 116 S.Ct. at 868–69.[7] Under Alaska law, however, the Johnson parties are indispensable parties to the fraudulent conveyance claims, and Thomas, Head seeks only to disgorge from them, as alleged fraudulent transferees, the property Buster wrongfully transferred to them. Because Thomas, Head is not attempting to establish the Johnson parties' liability for the original judgment, we find *Peacock* inapposite.

In the 1887 decision of *Dewey v. West Fairmont Gas Coal Co.*, the Supreme Court held that federal district courts possess ancillary jurisdiction over a fraudulent conveyance action against the transferee of the judgment debtor's assets. In *Dewey*, as

> jurisdiction of the court follows that of the original cause, and may be maintained without regard to the citizenship of the parties or the amount involved[.]

292 U.S. at 239, 54 S.Ct. at 697 (citations omitted). *See also Julian*, 193 U.S. at 113, 24 S.Ct. at 407–08 (irrespective of the citizenship of the parties, "the protection and preservation of [federal] jurisdiction ... lie at the very foundation of ancillary jurisdiction" (quotation omitted)); *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 23, 6 L.Ed. 253 (1825) (Marshall, C.J.) (a federal court's jurisdiction "is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied"); *Bank of the United States v. Halstead*, 23 U.S. (10 Wheat.) 51, 53, 6 L.Ed. 264 (1825) ("The judicial power would be incomplete, and entirely inadequate to the purposes for which it was intended, if, after the judgment, it could be arrested in its progress, and denied the right of enforcing satisfaction[.]"); *id.* 23 U.S. (10 Wheat.) at 64 ("An execution is the fruit and end of the suit, and is

here, the transferee was not originally a party to the proceeding, and jurisdiction over the transferee was challenged because the latter was a citizen of the same state as the judgment creditor. On appeal, however, the Court rejected that objection on the ground that joinder was necessary to prevent avoidance of the judgment. 123 U.S. at 333, 8 S.Ct. at 150; *see also Empire Lighting Fixture Co. v. Practical Lighting Fixture Co.*, 20 F.2d 295, 296–97 (2d Cir.1927) (L. Hand, J.). The Supreme Court recently explained *Dewey*, stating:

> This Court's decision in *Dewey* ... explicitly rested upon "ancillary" jurisdiction, citing *Krippendorf v. Hyde*, 110 U.S. 276 [4 S.Ct. 27, 28 L.Ed. 145] (1884), in support of its holding that "[t]he suit in equity was an exercise of jurisdiction ... ancillary to that which it had already acquired in the action at law." 123 U.S., at 333 [8 S.Ct., at 150]. In *Dewey*, the new defendant added in the equitable counterclaim was asserted to have been the recipient of a fraudulent conveyance from the insolvent plaintiff, and the counterclaim was brought under a West Virginia statute authorizing suits to set aside such conveyances in assistance of an anticipated judgment or decree against the conveying debtor. Any decree on the counterclaim would presumably have been worthless if the fraudulent conveyance could not have been recaptured.

very aptly called the life of the law. The suit does not terminate with the judgment; and all proceedings on the execution, are proceedings in the suit[.]'").

7. *Peacock* suggested that whether a judgment creditor's post-judgment action is within a federal district court's ancillary enforcement jurisdiction hinges on whether it seeks not merely "to *collect* a judgment" but also "*to establish liability*" on the part of the third party. *See* —— U.S. at —— n. 6, 116 S.Ct. at 868 n. 6 (quotation omitted). The Court expressly declined to address the argument, raised by the United States as *amicus curiae*, that Thomas's supplementary claims were "intended merely as a supplemental bill to preserve and force payment of the ERISA judgment by voiding fraudulent transfers of [the judgment debtor's] assets," on the ground that "neither Thomas nor the courts below characterized this suit that way." *Id.* The issue left open in *Peacock* is precisely the issue presented in this case.

*Finley,* 490 U.S. at 551 n. 4, 109 S.Ct. at 2008 n. 4.[8]

The Johnson parties urge that *Dewey* is superseded by Fed.R.Civ.P. 69(a) and is distinguishable in that the transferee therein was joined in the prejudgment stage of the proceedings.[9] We reject both arguments. As to the argument that Rule 69(a) supersedes *Dewey,* the Federal Rules neither extend nor limit a federal court's subject matter jurisdiction. Fed.R.Civ.P. 82. As to the timing issue, the fact that the joinder and some of the transfers took place after judgment is not dispositive of whether the court has jurisdiction to effectuate its judgment by recapturing the judgment debtor's fraudulent conveyances. The principle of *Riggs v. Johnson County,* 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867), remains sound: "Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." In this case, the supplementary proceeding to set aside the fraudulent transfers is essential to prevent Buster's efforts to avoid the district court's original judgment. *See Peacock,* —— U.S. at ——, 116 S.Ct. at 869 ("Ancillary enforcement jurisdiction is, at its core, a creature of necessity."). We therefore find *Dewey* applicable, and hold that the district court properly exercised ancillary jurisdiction over both Buster and the Johnson parties in Thomas, Head's supplementary proceeding to set aside the alleged fraudulent conveyances.

## II

### *The Preliminary Injunction*

Buster and the Johnson parties each challenge the lower court's issuance of the preliminary injunction. Buster contends that the court erred in requiring him to post what amounted to a "mandatory" $125,000 supersedeas bond; the Johnson parties contend that the injunction was an invalid prejudgment attachment. We conclude that neither Buster nor the Johnson parties, having failed to appeal the preliminary injunction, may challenge its issuance on appeal from the entry of default judgment for their failure to obey the district court's order.

In *FTC v. American National Cellular,* 868 F.2d 315, 317 (9th Cir.1989), this court held that a party may not, upon appealing a contempt order, challenge the constitutionality of the underlying restraining order it has violated, unless that order is "transparently invalid" or has been declared unconstitutional in an unrelated proceeding. The "transparently invalid" exception traces from *dictum* in *Walker v. City of Birmingham,* 388 U.S. 307, 315, 87 S.Ct. 1824, 1829, 18 L.Ed.2d 1210 (1967), and, although this circuit has never found the "transparently invalid" exception applicable, *Walker* suggests there may be times when an injunction is so plainly unconstitutional as to permit it to be challenged after its violation. *See In re Establishment Inspection of Hern Iron Works, Inc.,* 881 F.2d 722, 727 (9th Cir.1989). Buster and the Johnson parties suggest this is such a case. We disagree.

In its request for a preliminary injunction, Thomas, Head expressly asked the court to consider "whether Buster should be required to pay into the registry of the court the $125,000 that was previously in Buster's counsel's law office trust account." ER 311 at 7. The court informed the parties that it would "consider ... the question of payment of money into the court registry." ER 313 at

---

8. In *Pennsylvania Railroad Co. v. Erie Ave. Warehouse Co.,* 302 F.2d 843 (3d Cir.1962), Judge Hastie, citing *Dewey,* succinctly answered any concern the parties have expressed as to ancillary jurisdiction in the present case:

> It has long been familiar federal practice to entertain an "ancillary" claim without independent jurisdictional basis, if that claim seeks either to make a principal judgment effective or to make some lawfully required reallocation of the burden imposed by the principal recovery. Such a supplemental proceeding may serve to effectuate a principal judgment ... [and] may achieve full justice by bringing into a suit a third party who should be required to pay the judgment on a claim because of a transfer to him in fraud of creditors. *Dewey v. West Fairmont Gas Coal Co.,* [123 U.S. 329, 8 S.Ct. 148, 31 L.Ed. 179 (1887)].

*Id.* at 845 (internal citations omitted).

9. In the present case, some of the transfers were alleged to have been made prior to the underlying judgment and some afterward.

1. The transcript of proceedings from oral argument on the preliminary injunction indicates that counsel for Buster was aware that a requirement to deposit the $125,000 with the registry of the court would be part of the injunction. The district court granted the injunction, including a requirement that Buster and the Johnson parties, on a joint and several basis, deposit $125,000 with the registry of the court. Upon entering the preliminary injunction, the district court found:

> Jack B. Buster's counsel, A. Lee Peterson, was in possession of $125,000 that this court understood was to be used by defendant Buster in order to post a supersedeas bond. Based on evidence presented to this court, there is a substantial likelihood that the $125,000 are proceeds of transferred assets which are the subject of plaintiffs' fraudulent conveyance action and covered by the February 19, 1993 Temporary Restraining Order. *There is an appreciable risk that defendant Jack Buster or the impleaded defendants will dispose of these funds prior to resolution of plaintiffs' fraudulent conveyance action.* If these funds are dissipated, irreparable harm will be incurred by plaintiffs.

SER 334 at 2–3 (emphasis added).

### Buster

■ The record clearly reveals that there is no merit in Buster's contentions that the district court failed to consider the requisite factors for preliminary injunctive relief—i.e., the likelihood of success on the merits and irreparable injury—and that the district court failed to give Buster notice that the injunction could include the requirement of a $125,000 deposit with the registry of the court. Nor is there merit in Buster's argument that the $125,000 deposit requirement was an inappropriate means of requiring him to post a supersedeas bond. The district court found it substantially probable that the $125,000 was related specifically to property which was fraudulently conveyed to defraud Thomas, Head; the deposit requirement was not a substitute for a supersedeas bond. Under Alaska law, upon which Buster relies, courts are clearly authorized to enjoin any "act, removal, or disposition" of property done or made "with intent to delay or de-

fraud creditors." Alaska Stat. § 09.40.230. Furthermore, even if the district court erred as alleged by Buster, such a mistake would not render the injunction transparently invalid. Accordingly, we hold that Buster may not challenge the issuance of the preliminary injunction in this appeal from the finding of contempt and entry of default judgment. As the court explained in *American National Cellular*, Buster should have challenged the injunction "by direct appeal of the order." 868 F.2d at 317.

### The Johnson Parties

■ The Johnson parties raise a distinct challenge to the preliminary injunction. They suggest the district court erred in requiring a deposit of $125,000 under the injunctive relief provisions of Fed.R.Civ.P. 65. They urge that, as to them, the deposit requirement was actually a prejudgment attachment subject to Fed.R.Civ.P. 64. They argue that the district court required the deposit before adjudicating the merits of Thomas, Head's claims or complying with Alaska procedure, which requires plaintiffs to deposit "sufficient sureties" prior to obtaining prejudgment attachments. Alaska R.Civ. P.89(a). The Johnson parties maintain that these errors render the preliminary injunction transparently invalid.

In view of the court's order and its concern that the $125,000 had been fraudulently conveyed, we reject the Johnson parties' attack on the preliminary injunction. The court heard argument on the proposed injunction and found that Thomas, Head's fraudulent conveyance claims were likely to succeed. The Johnson parties' claim in no way implicates the court's inherent authority or jurisdiction to enter an order to preserve the possibility of equitable remedies. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir.1992); *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir.1988) (en banc), *cert. denied*, 490 U.S. 1035, 109 S.Ct. 1933, 104 L.Ed.2d 404 (1989). The $125,000 does not represent a money judgment for damages. The ultimate relief sought, the invalidation of various fraudulent conveyances, is equitable in nature. The injunction merely sought equita-

bly to preserve assets and monies found to be the product of fraudulent conveyances to the Johnson parties, in order to protect the court's earlier judgment against Buster. In such circumstances, the injunction cannot be characterized as having "only a frivolous pretense to validity." *Walker,* 388 U.S. at 315, 87 S.Ct. at 1829. Accordingly, we find that the Johnson parties may not challenge the issuance of the preliminary injunction in this appeal. *American National Cellular,* 868 F.2d at 317.

### The Default Judgment

When Buster and the Johnson parties failed to comply with the district court's preliminary injunction, Thomas, Head moved for an order to show cause why they should not be held in contempt. The court requested briefing on the motion, but Buster missed the deadline by twelve days and the court refused to consider his brief. The Johnson parties filed a timely brief and argued, as they have argued here, that the preliminary injunction was an invalid prejudgment attachment and, alternatively, that they did not have the money to comply. The claim that they could not comply, however, was unsupported by any admissible evidence.[10]

On September 28, 1993, the district court rejected the Johnson parties' arguments and granted Thomas, Head's motion for an order to show case. The court stated:

> Defendants failed to respond in any way to the court's preliminary injunction. No appeal was taken by defendants regarding any aspect of the preliminary injunction. Defendants ignored all directives of the preliminary injunction.
>
> Defendant Jack Buster has previously submitted to the court that while the court may order him to post a supersedeas bond, the court cannot force him to actually post the bond. That argument is inapplicable under the present circumstances. The court has entered a preliminary injunction. As part of the preliminary injunction, defendants are directed to pay $125,000 into the court registry. There is nothing in the preliminary injunction regarding the posting of a supersedeas bond. The court

may, through its use of civil contempt orders, do what is necessary under the facts of the case to require a party to comply with the directives of a preliminary injunction.

Defendants Janice Sue Buster, et al make two arguments why they did not respond to the court's preliminary injunction. First, defendants argue that the preliminary injunction requires them to pay a final judgment before the case is tried. Second, defendants submit that they cannot comply with the preliminary injunction because they do not have the funds.

Neither argument forms a basis on which defendants can ignore an order of the court. The preliminary injunction was issued as part of plaintiffs' fraudulent conveyance action. The court found, when it issued the preliminary injunction, that funds have fraudulently been transferred or dissipated. To prevent the loss of funds that might be used to satisfy plaintiffs' judgment, defendants were directed to deposit $125,000 into the court registry. Defendants could have appealed the issuance of the preliminary injunction. They did not. Defendants' submission that they cannot comply is inadequate. A mere assertion of inability to comply with a court's order is insufficient. Defendants must introduce evidence supporting their assertion. *Citronelle–Mobile Gathering, Inc. v. Watkins,* 943 F.2d 1297 (11th Cir.1991).

No cause having been shown by defendants why they should not be held in contempt for ignoring an order of this court, plaintiffs' motion to show cause is granted. As of the date of this order, default is entered in plaintiffs' fraudulent conveyance action as to defendants.... Default will be vacated upon compliance with the court's preliminary injunction.

Further, plaintiffs are granted costs to be determined by the clerk of court and reasonable attorney's fees to be determined by the court upon submission of appropriate documentation.

---

**10.** The Johnson parties' brief was supported only by an unsigned affidavit simply asserting, without supporting documentation, that they did not have sufficient funds to comply.

ER 363 at 3–4. Although the district court indicated that it would vacate default upon compliance with the preliminary injunction, Buster and the Johnson parties neither complied with its terms nor showed cause for their failure to do so. The court entered default judgment on the fraudulent conveyance claims nearly a year later, on August 8, 1994.[11] Buster and the Johnson parties appeal from the entry of default judgment.

■ Regarding the finding of contempt and entry of default judgment, Buster and the Johnson parties contend that the district court omitted several necessary procedural steps and erroneously combined its contempt determination with its decision to grant Thomas, Head's motion to show cause. They argue that the court merged into one action what should have been a five-step process: (1) deciding whether to grant plaintiffs' motion to show cause; (2) issuing the show cause order; (3) providing a hearing; (4) making a finding of contempt on the basis of affidavits and other evidence; and (5) determining and imposing sanctions. Quoting *Citronelle–Mobile Gathering, Inc. v. Watkins,* 943 F.2d 1297, 1304 (11th Cir.1991), they maintain that "[d]ue process requires that the court inform the alleged contemnor of the contemptuous conduct, and provide a hearing in which the alleged contemnor may explain why the court should not make a contempt finding." All of the defendants contend that they understood that the motion would result in either a grant or denial of the order to show cause, not a finding of contempt.[12]

■ The imposition of civil contempt and contempt sanctions is normally reviewed for an abuse of discretion. *Reebok Int'l, Ltd. v. McLaughlin,* 49 F.3d 1387, 1390 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 276, 133 L.Ed.2d 197 (1995). The issue of whether a district court provided an alleged contemnor due process, however, is a legal question subject to *de novo* review on appeal. *See Pennwalt Corp. v. Durand–Wayland, Inc.,* 708 F.2d 492 (9th Cir.1983); *see also* Fed. R.Civ.P. 43.

We find that Buster and the Johnson parties had ample notice and an opportunity to respond to the possibility that the court would find them in contempt. The district court expressly requested briefing in response to Thomas, Head's motion for an order to show cause why Buster and the Johnson parties should not be held in contempt. Buster failed timely to respond to the court's request and, although the Johnson parties filed a brief, they presented no admissible evidence to support their claim that they could not comply with the injunction. Although the district court did not set an evidentiary hearing on the contempt issue, the record reflects that neither Buster nor the Johnson parties asked for such a hearing in response to Thomas, Head's motion for an order to show cause. Moreover, while the district court's order provided that default would be vacated upon compliance with its preliminary injunction, Buster and the Johnson parties still failed to comply, even in part, throughout the following year, when default judgment was finally entered. Given these facts and the overwhelming evidence supporting Thomas, Head's request,[13] we think it is clear that the district court's actions did not constitute a denial of due process. In *Commodity Futures Trading*

---

11. The district court did not explicitly label its chosen contempt sanction, but we presume, as the parties do, that the entry of default and award of attorney fees were contempt sanctions for the parties' failure to comply with the directives of the preliminary injunction. Upon the court's entry of default judgment in 1994, the court awarded Thomas, Head attorneys' fees in the amount of $7500 plus costs and interest. ER 436 at 12–13.

12. Although Buster did not timely respond to the court's request for opposition to the motion to show cause, he notes that he had previously filed an affidavit with the court stating that he could not comply with the $125,000 deposit requirement, that he objected to the preliminary injunction on the basis that it included a "mandatory" deposit provision, and that he filed a response to the court's minute order requiring a deposit of funds. Buster suggests that this opposition, though not filed in response to the request for opposition to the motion for an order to show cause, indicates that a hearing was warranted.

13. Our review of the record evidence, *see* note 9, *supra,* requires that we reject the Johnson parties' argument that contempt was inappropriate because she could not comply with the injunction.

*Comm'n v. Premex, Inc.,* 655 F.2d 779, 782 n. 2 (7th Cir.1981), the court rejected the argument that contempt should be set aside pending a full evidentiary hearing, stating:

> [T]he refusal to grant a full evidentiary hearing did not constitute a due process denial where the documentary evidence presented by the CFTC was more than sufficient to establish the contemptuous conduct. In addition, defendants received the CFTC's motion and supporting papers in ample time to prepare for a show cause hearing. They also failed to demand such a hearing at that time and did not present any arguments which created any material issue of fact. Unlike the situation in *United States v. Alter,* 482 F.2d 1016, 1023–24 (9th Cir.1973), Premex was not deprived of a meaningful opportunity to present its defense. Defendants merely failed to take advantage of the chance they were afforded in the court below. This failure in no way negates the legal proof of the contemptuous conduct tendered by the CFTC.

Accordingly, we affirm the finding of contempt, the entry of default, the subsequent entry of default judgment, and the award of attorney fees against Buster and the Johnson parties.

### III

*Westwood's Rule 60(b)(4) Motion*

Westwood separately challenges the entry of default judgment against Buster and the Johnson parties as void for lack of jurisdiction as it affects Westwood's operations and property. Westwood was not a defendant at the time of the August 8, 1994 default judgment, although Westwood had notice of the proceedings by virtue of the notice to Buster, Westwood's general partner. *See* Alaska Stat. § 32.05.070. The default judgment set aside Buster's transfer of certain interests in Westwood, directed Westwood to "pay to the plaintiffs all present and future shares of all distributions, credits, draws, or payments which would have been paid to Jack Buster for his general and/or limited interest in Westwood" until the underlying judgment was satisfied, and authorized the sale of Buster's limited partnership interest in Westwood at an auction at which Thomas, Head was permitted to bid. ER 436 at 9–10.[14]

On June 1, 1995, Thomas, Head issued a notice of public sale of Buster's limited partnership interest in Westwood. On June 6, Westwood filed a motion under Fed.R.Civ.P. 60(b)(4) for relief from the default judgment entered against Buster and the Johnson parties.[15] Westwood argued that the default judgment, to the extent it affected its property, was void for lack of jurisdiction because it was not a party to the proceeding. Further, Westwood argued that under Alaska law a judgment creditor is limited to the rights of an assignee of the judgment debtor's interests, *see* Alaska Stat. § 32.11.340, and that the default judgment violated due process by depriving Westwood of its property interest in Buster's limited partnership interest under the partnership agreement. Specifically, Westwood's partnership agreement, which governs the rights of assignees under

---

**14.** On May 9, 1995, the magistrate judge appointed a receiver to assist Thomas, Head in the recovery of the defendants' interests in Westwood. The order granted the receiver access to Westwood's financial records and directed him to freeze Westwood's bank accounts and distributions of proceeds from the collection of payment on promissory notes to Westwood until the court could determine what portion of the account funds and the note payments belonged to Buster and the Johnson parties. Westwood then sought leave to intervene. In its motion to intervene, Westwood stated that "[p]rior to the issuance of [the May 9] Order, Westwood Acres, as a limited partnership entity, was in no way affected by this lawsuit." ER 546, Memorandum in Support of Motion to Intervene, at 2. Westwood sought to vacate the May 9 order. On May 30, the magistrate judge granted Westwood's motion to intervene. On June 7, the magistrate judge found that the May 9 order exceeded the district court's authority and vacated that portion of the order which authorized the receiver to freeze Westwood's bank accounts and the distribution of promissory note payments. Although Westwood criticizes the May 9 order in its opening brief on appeal, it did not appeal either the May 9 or the June 7 order. This issue is therefore not before us on appeal.

**15.** Fed.R.Civ.P. 60(b)(4) provides in relevant part: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void; ...."

§ 32.11.340, gives the general partner the right to veto the sale of any limited partnership interest, although there is no limitation on the assignment of the right to distributions. On June 13, the district court rejected Westwood's Rule 60(b)(4) motion because the default judgment had only a limited effect on Westwood and because Buster effectively controlled Westwood.[16] Westwood appeals the denial of the Rule 60(b)(4) motion.

We find that the district court properly denied Westwood's Rule 60(b)(4) motion.[17] As we have found, the district court had supplementary jurisdiction over Buster's limited partnership interest and the other interests in Westwood that Buster had previously conveyed. Those interests were subject to the court's jurisdiction because Buster and the transferees of those interests were parties to the proceeding at that time. The default judgment did not deprive Westwood of property without due process of law. First, Westwood had no property right as to the distributions to which Buster would otherwise have been entitled. Under Alaska law, the district court was entitled to require Westwood to pay the distributions to which Buster was entitled to Thomas, Head as judgment creditors who assumed the role of assignees of his partnership interests. *See* Alaska Stat. § 32.11.340. Second, to the extent that the default judgment had an incidental effect on Westwood's property right in *controlling the sale* of Buster's limited partnership interests under the partnership agreement, that right was not violated without due process of law. Westwood had notice of the proceedings through its general partner and could have intervened earlier in order to protect its interests. Furthermore, the specific asserted property interest—i.e., the right of the general partner to consent to the sale—was fully protected by the general partner's involvement in the proceedings. Under these circumstances, we find no deprivation of Westwood's property rights without due process.[18]

For the foregoing reasons, the default judgment against Buster and the Johnson parties and the denial of Westwood's 60(b)(4) motion is AFFIRMED.[19]

16. On June 20, 1995, Buster's limited partnership interest was sold at an auction to Thomas, Head for what Westwood contends was less than its fair market value.

17. "A judgment is not void merely because it is erroneous. It is void only if the court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or if the court acted in a manner inconsistent with due process of law." *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1448 (9th Cir.1985). A party has standing to make a Rule 60(b)(4) motion on due process grounds only if its property rights were adversely affected by the challenged judgment. *Id.* at 1445.

18. Westwood was not an indispensable party to the proceedings. Westwood had not claimed an interest in Buster's limited partnership interest at the time of the default judgment and the district court was able to craft appropriate and meaningful relief in the absence of Westwood which, as we have discussed, did not prejudice Westwood's property rights. *See* Fed.R.Civ.P. 19. Thus, we find that the default judgment against Buster and the Johnson parties is not void for lack of jurisdiction for failure to join Westwood as an indispensable party. Furthermore, even if Westwood had been an indispensable party to the proceed-

ings, that would not necessarily be a jurisdictional defect that would make the default judgment amenable to attack by way of a Rule 60(b)(4) motion. *See Kansas City S. Ry. Co. v. Great Lakes Carbon Corp.*, 624 F.2d 822, 824–25 & n. 2 (8th Cir.) (en banc), *cert. denied*, 449 U.S. 955, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980).

19. Westwood filed its notice of appeal from the denial of its Rule 60(b)(4) motion on June 16, 1995. Prior to that, on May 30, Westwood filed a claim for damages against Thomas, Head. On June 19, Thomas, Head filed a response to Westwood's counterclaims and filed its own counterclaim against Westwood, requesting the appointment of a receiver for Westwood. On September 14, 1995, the magistrate judge appointed a receiver for Westwood—the same receiver as appointed in the May 9 order that was subsequently vacated in part, *see* note 14, *supra*—as requested by Thomas, Head. As in the partially vacated May 9 order, the receiver was empowered to freeze Westwood's assets and distributions until the court determined whether they belonged to Buster and the Johnson parties.

On December 19, 1995, in its reply brief to this court on appeal from the denial of its Rule 60(b)(4) motion, Westwood complained that the

district court's September 14 order exceeded the district court's jurisdiction pending the appeal from the denial of its Rule 60(b)(4) motion. Although Westwood was entitled to appeal the September 14 order appointing a receiver under 28 U.S.C. § 1292(a)(2), it did not do so.

Ordinarily this court lacks jurisdiction to consider an appeal from a district court order unless a notice of appeal is filed as to that order. Fed. R.App.P. 4(a)(1); *Browder v. Director, Dep't of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 560–61, 54 L.Ed.2d 521 (1978). Because Westwood had filed a prior notice of appeal from the denial of its Rule 60(b)(4) motion, Westwood suggests that its failure to file a notice of appeal from the subsequent order does not deprive this court of appellate jurisdiction over the subsequent order. In *Miranda v. Southern Pac. Transp. Co.*, 710 F.2d 516 (9th Cir.1983), this court exercised appellate jurisdiction to determine whether the district court had jurisdiction to enter an order, after the filing of a notice of appeal as to a prior order, despite the lack of a timely notice of appeal from the subsequent order. *Id.* at 519. *Miranda* also recognized, however, that this court would not have jurisdiction to consider the merits of the subsequent order if the district court had possessed jurisdiction to enter that order. *Id.* at 519 n. 6. Thus, under *Miranda*, we have jurisdiction to determine whether the magistrate judge had jurisdiction to enter the September 14 order, which was entered after Westwood's notice of appeal from the denial of its Rule 60(b)(4) motion, but not to determine whether the September 14 order was correct on the merits.

"The general rule is that an appeal to the circuit court deprives a district court of jurisdiction as to any matters involved in the appeal." *Hoffman v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir.1976). This rule does not apply if the district court has a continuing duty to maintain the status quo pending appeal and if new facts and circumstances arise which require further action to supervise the case and to maintain the status quo. *Id.; see also Meinhold v. United States Dep't of Defense*, 34 F.3d 1469, 1480 n. 14 (9th Cir.1994).

The magistrate judge found that Buster, as the general partner of Westwood, had concealed from Thomas, Head certain Westwood distributions; that Thomas, Head agreed not to oppose legitimate distributions to Westwood's limited partners unrelated to Buster; and that Thomas, Head was at risk of losing monies to which it was entitled as a result of Westwood's unsupervised distributions. These factual findings, with which we discern no basis on the present record to find in error, suggest that the magistrate judge had a duty to rule on Thomas, Head's counterclaim in order to prevent the depletion of Westwood's assets. Thus, we find that the district court properly exercised its jurisdiction notwithstanding Westwood's prior notice of appeal. Accordingly, Westwood was required to file a separate notice of appeal in order to challenge the merits of the September 14 order, as the parties did in *Meinhold*, 34 F.3d at 1473, and *Hoffman*, 536 F.2d at 1271.