Sean JONES, Plaintiff,

v.

**NORTH WEST TELEMARKETING, INC., an Oregon corporation, Defendant.**

No. CIV. 99–990–JO.

United States District Court, D. Oregon.

March 6, 2001.

J. Dana Pinney, Bailey Pinney & Associates, Tualatin, OR, for Plaintiff.

John W. Weil, Hooper Englund & Weil, Robert Lane Carey, Barran Liebman, Portland, OR, for Defendant.

## OPINION AND ORDER

ROBERT E. JONES, District Judge.

Plaintiff Sean Jones ("plaintiff") filed his original complaint against defendant Northwest Telemarketing, Incorporated ("NWT") on July 12, 1999. Judgment was entered for plaintiff on August 31, 2000, and included an award of attorney fees and costs. Since that time, plaintiff claims that he has made repeated efforts to collect this judgment, all of which have been unsuccessful.

The case is before me now on plaintiff's motion to amend pleadings (# 131) and plaintiff's motion for order to show cause (# 134), both of which represent plaintiff's efforts to collect the judgment entered in the underlying action. After considering the arguments of the parties and the evidence submitted, plaintiff's motion to amend pleadings is GRANTED in part and DENIED in part in accordance with this opinion; his motion for an order to show cause is GRANTED.

## FACTS

The factual background of the underlying action in this case has been exhaustively discussed, and I therefore address in this order only the facts relevant to the instant motions. On April 21, 2000, a jury verdict was entered in favor of plaintiff and against NWT in the amount of $12,484.80. On August 14, 2000, this court issued an order awarding attorneys' fees and costs to plaintiff in the amount of $53,934.12 and $3,081.25. Judgment was entered for plaintiff on August 31, 2000.

Since the entry of judgment, plaintiff has made several efforts to collect this judgment. At least three writs have been issued to ascertain NWT's account holdings since September 29, 2000. Further, on November 6, 2000, plaintiff filed a motion for a judgment debtor exam, which

was granted by this court on November 9, 2000.

On January 8, 2001, plaintiff filed the current motions to amend the pleadings and for an order to show cause. On the same day, he filed a Creditor's Bill, seeking an order of this court setting aside allegedly fraudulent transfers of assets by NWT. Plaintiff's motion to amend the pleadings requests that plaintiff be permitted to supplement his pleadings to join as defendant-grantees North West Direct Teleservices, Inc., North West Direct of Sisters, Inc. and Timothy Rote (collectively referred to as "defendant-grantees"). Plaintiff's motion for an order to show cause requests that NWT and defendant-grantees be required to appear and answer the allegations as set forth in the Creditor's Bill.

## DISCUSSION

The crux of plaintiff's argument is that NWT fraudulently transferred its assets to defendant-grantees in order to avoid or delay payment of its debt to plaintiff. Plaintiff's motions seek to join the defendant-grantees in order to collect the assets allegedly transferred to them. He argues that this court may exercise jurisdiction over these post-judgment proceedings in order to enforce the underlying judgment in the original action. NWT responds that this proceeding is properly construed as an independent claim for fraudulent conveyance, and that it should therefore be brought as a separate cause of action in state court.

My analysis begins with the Federal Rules of Civil Procedure. In proceedings "supplementary to and in aid of judgment," Fed.R.Civ.P. 69(a) directs federal courts to apply "the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought." Thus, I must look to Oregon law to determine whether this court may exercise jurisdiction over the post-judgment proceedings at issue here.

There is substantial authority under Oregon law for a court to exercise jurisdiction over post-judgment proceedings to enforce its underlying judgment. First, Or. Rev.Stat. § 95.260, which lists the remedies available to a judgment creditor in a fraudulent conveyance action, provides that "[i]f a creditor has obtained a judgment on a claim against the debtor and if the court so orders, the creditor may levy execution on the asset transferred or its proceeds." While § 95.260 does not explicitly permit a court to exercise jurisdiction over a post-judgment action for fraudulent conveyance, (2) above permits "the court" to "levy execution on the asset" if "a creditor has obtained a judgment." That section does not specifically state that "the court" is necessarily the court that entered the underlying judgment. Given the context of that section, however, which limits its application to cases in which the creditor has "obtained a judgment," it is a reasonable inference that "the court" permitted to levy execution of the assets includes the court that entered the underlying judgment.

Moreover, Oregon courts have frequently exercised jurisdiction over post-judgment motions to ensure that the underlying judgment is effectively enforced. *See, e.g., Powder Valley Water Control Dist. v. Hart Estate Investment Co.,* 140 Or.App. 515, 519, 915 P.2d 1037 (1996), *rev'd on other grounds,* 146 Or.App. 327, 932 P.2d 101 (1997) (concluding that the district court retained jurisdiction to vacate or correct judgment notwithstanding the fact that appeal of the judgment was pending); *Looney v. Aho,* 102 Or.App. 588, 795 P.2d 1089 (1990) (noting that the trial court has jurisdiction over post-judgment motions, and that its jurisdiction is not affected by affirmance of its judgment on appeal);

*Ketcham v. Selles,* 96 Or.App. 121, 772 P.2d 419 (1989) (upholding the trial court's post-judgment order offsetting a prior judgment to effectuate payment of its own judgment).

Furthermore, it is a well-established principle that a trial court has the inherent power to enforce its own judgments. The Supreme Court of Oregon has explained: "That courts possess inherent powers not derived from any statute is undeniably true. Among these powers are the right to ... enforce obedience to their mandates." *Oregon v. Huffman,* 207 Or. 372, 404, 297 P.2d 831 (1956). The United States Supreme Court has recognized the same principle:

> We have reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments. Without jurisdiction to enforce a judgment entered by a federal court, 'the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.' *Peacock v. Thomas,* 516 U.S. 349, 356, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996) (*quoting Riggs v. Johnson County,* 73 U.S. 166, 6 Wall. 166, 187, 18 L.Ed. 768 (1868)).

This power has generally been extended to authorize federal courts to enforce their judgments by setting aside fraudulent conveyances of the judgment debtor. *See Swift & Co. Packers v. Compania Colombiana Del Caribe,* 339 U.S. 684, 694–95, 70 S.Ct. 861, 94 L.Ed. 1206 (1950) (the power of the federal court "to protect its jurisdiction from being thwarted by a fraudulent transfer ... applies equally whether it is concerned with executing its judgment or authorizing an attachment to secure an independent maritime claim"); *see also Dewey v. West Fairmont Gas Coal Co.,* 123 U.S. 329, 333, 8 S.Ct. 148, 31 L.Ed. 179 (1887).

The Ninth Circuit recently faced this precise issue in *Thomas, Head & Greisen Employees Trust v. Buster,* 95 F.3d 1449 (9th Cir.1996). In *Thomas,* as here, a judgment creditor in an underlying action filed a post-judgment pleading to join grantees of an allegedly fraudulent conveyance. Applying Alaska law, the Ninth Circuit held that the district court had jurisdiction to consider the creditor's claims, despite the fact that the transferees were not parties to the underlying action. The court relied on two aspects of Alaska law in reaching its conclusion. First, it noted that under Alaska law, grantees are indispensable parties in fraudulent conveyance actions. *Id.* at 1454. The Oregon Supreme Court has reached the same conclusion. *See American Bonding Co. of Baltimore v. Stilwell,* 202 Or. 526, 528, 276 P.2d 415 (1954) (reasoning that "[s]ince the grantee of the property acquires an interest therein by reason of the conveyance, such grantee is a necessary and indispensable party to any proceeding brought to subject the property to the debt").

The second consideration relied on in *Thomas* was that under Alaska R. Civ. P. 69(c), the district court was authorized to "make an order restraining the judgment debtor from selling, transferring, or in any manner disposing of any property liable to execution pending the proceeding." The court recognized in its decision that similar to the applicable Oregon rule, Rule 69(c) does not explicitly permit a district court to entertain post-judgment fraudulent conveyance actions. It nonetheless concluded that the Rule 69(c) "permits the use of postjudgment orders to *prevent* fraudulent conveyances," and that the court's exercise of jurisdiction thus "accorded with the spirit of the Rules and was a sufficiently close adherence to state procedures." *Thomas,* 95 F.3d at 1452 (emphasis in original; citations and quotations omitted). As reviewed above, Oregon law permits

the same practice. Accordingly, the same conclusion can be reached here.[1]

That said, to the extent that plaintiff seeks to establish the new defendant-grantees' *actual liability* for the underlying judgment, this court is unable to do so in light of the Supreme Court's holding in *Peacock v. Thomas*, 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996). In that case, the Court held that courts' enforcement power does not extend to suits attempting to impose actual liability for the underlying judgment on new defendants not parties to the original action. *Id.* at 357, 116 S.Ct. 862. Subsequently, in *Thomas*, the Ninth Circuit concluded that while *Peacock* prohibits the imposition of liability for the underlying judgment on new defendants, it does not prohibit supplemental proceedings to collect assets improperly transferred from individuals not parties to the underlying action. *See Thomas*, 95 F.3d at 1453. Thus, plaintiff's requests in its Creditor's Bill that this court order "defendant-grantees jointly and severally liable for the judgment as to plaintiff" and enjoin defendant-grantees "from transferring assets or business out of the State of Oregon" are beyond the permissible scope of this action and must be denied.[2] Creditor's Bill ¶ 21.

For the foregoing reasons, I conclude that plaintiff may amend his pleadings to join the additional defendant-grantees, but only to the extent that the action seeks to collect the allegedly transferred assets. Additionally, I have reviewed defendant's

objections to plaintiff's motion for an order to show cause and conclude that they lack merit. Accordingly, plaintiff's motion for an order to show cause is granted.

## CONCLUSION

Plaintiff's motion to amend pleadings (# 131) is GRANTED in part and DENIED in part in accordance with this opinion; his motion for an order to show cause (# 134) is hereby GRANTED.

---

1. Additional support for this conclusion may be found in Fed.R.Civ.P. 18(b), which provides that where a claim is cognizable only after a separate judgment is entered, the plaintiff may "state a claim for money and a claim to have set aside a conveyance fraudulent as to that plaintiff, without first obtaining a judgment establishing the claim for money."

2. Plaintiff contends that the additional named parties are actually alter egos of NWT, the

original defendant, and thus may be held liable in spite of the fact that they were not parties to the original action. While plaintiff's argument may be accurate, it presents a new substantive theory, and as such, does not fall within the residual federal jurisdiction of the original action. *See, e.g., USI Prop. Corp. v. M.D. Constr. Co.*, 230 F.3d 489, 498 (1st Cir.2000).