**Dirk EPPERSON and Betty Schneider, Plaintiffs–Appellants,**

v.

**ENTERTAINMENT EXPRESS, INC., now known as Advantix, Inc., Irvin Richter, Hill International, Inc., and Hill Arts & Entertainment Systems, Inc., now known as Haesi Software, Inc., Defendants–Appellees.**

No. 00–7567.

United States Court of Appeals, Second Circuit.

Argued Nov. 28, 2000.

Decided March 7, 2001.

Robert Sullivan, Westport, CT, for Plaintiffs–Appellants.

Carolyn W. Kone, Brenner, Saltzman & Wallman, LLP, New Haven, CT, for Defendants–Appellees.

Before: VAN GRAAFEILAND and KATZMANN, Circuit Judges and JONES, District Judge.*

JONES, District Judge:

### Introduction

This case requires us to consider whether this Court's decision in *Empire Lighting Fixture Co. v. Practical Lighting Fixture Co.*, 20 F.2d 295 (2d Cir.1927), survives the Supreme Court's ruling in *Peacock v. Thomas*, 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996). We hold that it does. Having decided on the basis of *Empire Lighting* that the district court had jurisdiction over this action, we also hold that the appellants are not precluded from bringing this suit and the district court erred in dismissing it.

We vacate and remand.

### I. *BACKGROUND*

On October 4, 1995, the appellants filed a diversity action ("the first action") in the United States District Court for the District of Connecticut against Hill Arts and Entertainment Systems, Inc. ("HAESI") seeking damages for breach of a software development contract and an unpaid account. In October 1996, appellants learned that HAESI had previously sold substantially all of its assets in May of 1996 to Entertainment Express, Inc. ("Express"). After HAESI failed to appear and to comply with the district court's discovery orders, the court granted a default judgment against it on February 11, 1997.[1]

On March 12, 1997, after the default judgment against HAESI was granted but before its entry, the appellants amended the complaint in the first action. The amended complaint incorporated the two contract claims alleged in the original complaint and added two new claims and three new defendants: Express, Hill International, Inc. ("Hill") and Irvin Richter ("Richter"). The new third claim alleged that Richter and Hill owned and controlled HAESI and that by virtue of the unity of interest and ownership between the three defendants Hill and Richter should be held liable for HAESI's obligations on an alter ego theory. The fourth claim specifically alleged that HAESI's May 1996 asset sale to defendant Express was a fraudulent conveyance. Both the original and amended complaints asserted the diversity of citizenship of the parties under 28 U.S.C. § 1332 as the basis for subject matter jurisdiction.

On June 30, 1997, the appellees moved to dismiss the amended complaint on the ground that diversity no longer existed. They argued that as of the date of the amended complaint defendant Express (which at this point had changed its name to Advantix, Inc.) had shifted its corporate governance from Connecticut to California making it a California citizen and destroying diversity.

---

* The Honorable Barbara S. Jones, of the United States District Court for the Southern District of New York, sitting by designation.

1. This default judgment, in the amount of $422,446, was not finally entered against HAESI until April 23, 1997.

On March 23, 1998 the district court dismissed the amended complaint against the appellees for lack of subject matter jurisdiction because the parties lacked complete diversity. The court concluded that both the appellants and appellee Express were citizens of California. The district court subsequently denied appellants' motion for reconsideration without opinion in a summary order.

Appellants did not appeal the decision. Rather, on April 27, 1999 they filed a new action ("the second action") in the District of Connecticut. The first claim essentially mirrored the fraudulent conveyance claim in the amended first action, alleging that HAESI fraudulently conveyed its assets to defendant Advantix, Inc. The second claim alleged that HAESI had fraudulently granted liens in its property in favor of Hill and/or Richter and that the liens lacked consideration and were not properly perfected. The complaint pled the court's inherent enforcement jurisdiction as the basis of subject matter jurisdiction, acknowledging the lack of diversity among the parties. Notably, plaintiffs did not plead alter ego as a basis for liability in this second action.[2] On March 31, 2000 the district court dismissed the second action for lack of subject matter jurisdiction.

In its opinion the district court noted that the appellants sought to enforce a prior default judgment entered against HAESI and that they were proceeding on a fraudulent conveyance theory. The court acknowledged that federal courts have ancillary jurisdiction to enforce their judgments, but held that plaintiffs' fraudulent conveyance claims fell outside the court's ancillary jurisdiction. Citing *Peacock*, the court found that the fraudulent conveyance claims were "based on new theories of liability that were not asserted in the original complaint" and required an independent basis for jurisdiction. Since the court had determined that the parties lacked diversity, it held that it lacked subject matter jurisdiction and dismissed the action.[3] That decision is the subject of this appeal.

## II.  *DISCUSSION*

### A.  Jurisdiction

■ We begin with the question of whether the district court had jurisdiction to consider the second action—a question we review de novo. *See In.re Vogel Van & Storage, Inc.*, 59 F.3d 9, 11 (2d Cir.1995).

The seminal case in this Circuit is *Empire Lighting Fixture Co. v. Practical Lighting Fixture Co.*, 20 F.2d 295 (2d Cir. 1927). There, the plaintiff obtained a judgment against the Practical Company for infringement of a design patent. Thereafter, it filed a "supplemental bill" alleging that the Practical Company had fraudulently transferred its assets to the Perfect Company and a Mr. Aarons for the purpose of preventing plaintiff from recovering its judgment. The District Court found that the transfer had in fact been made to prevent the execution of plaintiff's judgment and awarded judgment against the Perfect Company for the amount of profits due to the plaintiff from the Practical Company.

On appeal, the Second Circuit first considered whether the action against the Perfect Company came within the ancillary jurisdiction of the district court, "regardless of the fact that there was no diversity of citizenship between the parties." *Id.* at 296. Writing for the Court, Judge Learned Hand answered that question in the affirmative:

---

**2.** The appellants filed a separate action in the District of New Jersey alleging alter ego liability against defendant Richter.

**3.** Because the district court granted appellees' motion to dismiss for lack of jurisdiction, it did not reach appellees' contentions that the court's prior dismissal of the amended complaint in the first action barred the second complaint by application of the principles of res judicata and collateral estoppel. Nor did it reach the issue of personal jurisdiction over defendant Richter.

[W]e think that the District Judge was right in concluding that out of it might be spelled enough to support it as a bill to set aside a fraudulent conveyance. As such it was within the ancillary jurisdiction of the District Court, regardless of the fact that there was no diversity of citizenship between the parties. A fraudulent conveyance is void under the New York statute, and may be disregarded, even by a creditor whose judgment is entered afterwards. A suit to set it aside is not therefore essential, but is only an alternative remedy. It clears the title of the creditor in limine, and is in aid of the principal purpose of the suit; it "is in substance an equitable execution."

20 F.2d at 296–97 (internal citations omitted).

In so holding, the Court distinguished *H.C. Cook Co. v. Beecher,* 172 F. 166 (D.Conn.1909), *aff'd,* 217 U.S. 497, 30 S.Ct. 601, 54 L.Ed. 855 (1910):

*Cook v. Beecher* was quite another case. There the plaintiff tried to hold the directors of a company upon their liability as such for a judgment rendered against it. Such a liability is not an incident to the collection of the judgment itself, but an independent cause of action.

*Empire Lighting,* 20 F.2d at 297 (citations omitted).

■ Thus, in this Circuit, under *Empire Lighting,* a distinction for jurisdictional purposes exists between an action to collect a judgment (as in *Empire Lighting* ) and an action to establish liability on the part of a third party (as in *Beecher* ). The former does not require an independent jurisdictional basis and may proceed even if the parties are non-diverse. The latter must have its own source of federal jurisdiction, so that absent an independent basis for federal jurisdiction a new defendant may not be haled into federal court. If *Empire Lighting* remains good law, the conclusion seems inescapable: because the second action in this case was a suit to set aside a fraudulent conveyance (and not to establish liability) "it was within the ancillary jurisdiction of the District Court." *Id.* at 296.

Appellees' principal argument is that *Empire Lighting* is no longer good law after the Supreme Court's decision in *Peacock v. Thomas,* 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996). We disagree.

In *Peacock,* plaintiff Thomas prevailed on an ERISA claim against his employer in the district court. While the judgment was on appeal, an officer and shareholder of the employer company named Peacock settled many of the employer's accounts. Thomas failed to execute on the judgment pending appeal, and was unsuccessful in collecting on the judgment after its affirmance by the court of appeals. Thomas thereafter sued Peacock personally in federal court, alleging fraudulent conveyance of the company's assets to prevent satisfaction of the ERISA judgment, and later added a claim to pierce the corporate veil. The district court pierced the corporate veil and entered a judgment against Peacock in "the precise amount of the judgment" against the employer. *Id.* at 352, 116 S.Ct. 862. The court of appeals affirmed, holding that the district court had ancillary jurisdiction over the suit against Peacock.

The Supreme Court agreed to hear Peacock's appeal and framed the issue as "whether federal courts possess ancillary jurisdiction over new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment." *Id.* at 351, 116 S.Ct. 862. Focusing first on the two distinct branches of ancillary jurisdiction, the Court stated:

[A] federal court may exercise ancillary jurisdiction "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent and (2) to enable a court to function successfully, that is, to

manage its proceedings, vindicate its authority, and effectuate its decrees."

*Peacock,* 516 U.S. at 354, 116 S.Ct. 862 (quoting *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 379–80, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). The Court held that for ancillary claims having a factual and logical dependence on "the primary lawsuit," such claims "will not support federal jurisdiction over a subsequent lawsuit." *See id.* at 355, 116 S.Ct. 862.

For the enforcement branch of ancillary jurisdiction however, the Court stated:

> We have reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments. Without jurisdiction to enforce a judgment entered by a federal court, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." In defining that power, we have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances.

*Id.* at 356, 116 S.Ct. 862 (internal citations omitted).

The Court also noted that it had "never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357, 116 S.Ct. 862. Significantly, it immediately gave definition to the phrase "person not already liable for that judgment" by describing the veil-piercing claims in *H.C. Cook Co. v. Beecher* and concluding that "Beech-

er governs this case." *Id.* at 358, 116 S.Ct. 862. In *Beecher,* the Supreme Court affirmed this Circuit's holding that veil-piercing claims in a subsequent action require an independent jurisdictional basis.

Contrary to appellees' argument, *Peacock* does not hold that fraudulent conveyance claims brought in a subsequent action require an independent jurisdictional basis.[4] In footnote 6 of the *Peacock* opinion, the Court refused to characterize the Thomas lawsuit as a fraudulent conveyance action. As the Court explained:

> The United States, as *amicus curiae* for Thomas, suggests that the proceeding below was jurisdictionally indistinguishable from *Swift & Co. Packers v. Compania Colombiana Del Caribe, S. A.,* 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950), *Dewey v. West Fairmont Gas Coal Co.,* 123 U.S. 329, 8 S.Ct. 148, 31 L.Ed. 179 (1887), *Labette County Comm'rs v. United States ex rel. Moulton,* 112 U.S. 217, 5 S.Ct. 108, 28 L.Ed. 698 (1884), and *Riggs v. Johnson County,* 6 Wall. 166, 18 L.Ed. 768 (1868) because it was intended merely as a supplemental bill to preserve and force payment of the ERISA judgment by voiding fraudulent transfers of Tru–Tech's assets. We decline to address this argument, because, even if Thomas could have sought to force payment by mandamus or to void postjudgment transfers, neither Thomas nor the courts below characterized this suit that way. Indeed, Thomas expressly rejects that characterization of his lawsuit. Brief for Respondent 4 ("This action ... is not one to *collect* a judgment, but one to *establish liability* on the part of the Petitioner.").

*Id.* at 357 n. 6, 116 S.Ct. 862 (internal citation omitted).

---

4. Appellees rely for this position upon one sentence in *Peacock* in which the Court observed that "[t]he alleged wrongdoing in this case occurred after the ERISA judgment was entered, and Thomas' claims—civil conspiracy, fraudulent conveyance, and "veil pierc-

ing"—all involved new theories of liability not asserted in the ERISA suit. *See id.* at 358–59, 116 S.Ct. 862. To convert this isolated sentence into a holding, however, is to misconstrue the thrust of the *Peacock* decision and to ignore footnote 6 of the opinion.

If the *Peacock* Court had intended to hold that claims to void fraudulent transfers required an independent basis for jurisdiction, that footnote, which left open that very issue, would have been unnecessary. In finding that *Peacock* specifically distinguished Thomas' case from an effort to void a post-judgment fraudulent conveyance we join the First and Ninth Circuits who have previously reached the same conclusion. *See U.S.I. Props. Corp. v. M.D. Constr. Co.*, 230 F.3d 489, 499 (1st Cir.2000)(noting that the Court specifically declined to address Thomas' claim as a fraudulent conveyance claim); *Thomas, Head, & Greisen Employees Trust v. Buster*, 95 F.3d 1449, 1454 n. 7 (9th Cir. 1996) (same).

Since *Peacock*, most courts have continued to draw a distinction between post-judgment proceedings to collect an existing judgment and proceedings, such as claims of alter ego liability and veil-piercing, that raise an independent controversy with a new party in an effort to shift liability. Where the post-judgment proceeding is an effort to collect a federal court judgment, the courts have permitted judgment creditors to pursue, under the ancillary enforcement jurisdiction of the court, the assets of the judgment debtor even though the assets are found in the hands of a third party. *See Thomas, Head*, 95 F.3d at 1454; *see also Securities & Exchange Comm'n v. Antar*, 120 F.Supp.2d 431, 440 (D.N.J.2000) (asserting jurisdiction over fraudulent conveyance claim, noting "the SEC's claim is exactly the sort of claim approved in *Peacock*—it seeks to reach assets belonging to the judgment debtor but found in the hands of

the relief defendants"); *Merrell v. Miller*, No. Civ. A–91–493–A, 1998 WL 329264, at *2 (E.D.Va. June 8, 1998) (citing *Peacock* and permitting fraudulent conveyance claim to proceed, noting "plaintiff does not allege that he should be able to satisfy his judgments by reaching Ms. Deal's assets or Ms. Locher's assets; rather, he alleges that the assets in question rightly belong to defendant Miller.").[5]

In *Thomas, Head*, the Ninth Circuit, after a lengthy discussion of *Peacock*, held that a district court has enforcement jurisdiction over a judgment creditor's fraudulent conveyance claims against transferees who were not parties to the underlying action.[6] The Court distinguished the plaintiffs' fraudulent conveyance claims from the veil-piercing claim at issue in *Peacock*:

> Thomas, Head seeks only to disgorge from them, as alleged fraudulent transferees, the property Buster wrongfully transferred to them. Because Thomas, Head is not attempting to establish the Johnson parties' liability for the original judgment, we find *Peacock* inapposite.

95 F.3d at 1454.

*Futura Development of Puerto Rico, Inc., v. Estado Libre Asociado de Puerto Rico*, 144 F.3d 7, 11 n. 2 (1st Cir.1998) does not hold to the contrary. *Futura* involved an alter ego claim, not one for fraudulent conveyance. Moreover, it was decided before *U.S.I. Properties*, which was also an alter ego case, but clearly recognized in dicta the federal courts' enforcement jurisdiction over an action seeking to reach the assets of a judgment

---

**5.** Only the 7th Circuit in *Galuska v. Geoquest Inc.*, No. 98–1892, 1998 WL 879510, 172 F.3d 53 (7th Cir. Dec.9, 1998) has held that *Peacock* requires an independent basis for jurisdiction for fraudulent conveyance claims raised in a subsequent action. We are unpersuaded by *Galuska* and note that it is an unpublished order, which may not be cited or used as precedent within its own Circuit. *See* Seventh Circuit Local Rule 53(b)(2)(iv).

**6.** Appellees attempt to distinguish *Thomas, Head* because the fraudulent conveyance claims there were brought as a supplementary proceeding in the same action, unlike the fraudulent conveyance action in the instant case, which was brought as a separate action. This argument has no merit. The important distinction is not whether the claim is brought in a second action but whether it seeks to impose liability for the underlying judgment on a new party.

debtor in the hands of a third party.[7]  *See* 230 F.3d at 496.

██ In the present proceeding, Appellants seek only to void the allegedly fraudulent conveyances of HAESI to and among Richter, Hill, and Advantix, in order to ensure the collectibility of the default judgment against HAESI.  Their fraudulent conveyance claims do not seek to hold Richter, Hill, or Advantix liable[8] for the existing judgment against HAESI as alter egos of HAESI or to pierce the corporate veil of HAESI.  Under Connecticut law, fraudulent conveyance actions operate as simple collection mechanisms; they do not present a substantive theory seeking to establish liability on the part of a new party not otherwise liable.  Nothing in Connecticut statutory or common law would permit a party to impose liability for the underlying judgment on the transferee of a fraudulent conveyance or to reach the transferee's own assets.  *See* Conn. Gen. Stat. Ann. § 52–552h(b) (specified remedies under Uniform Fraudulent Transfer Act limited to avoidance of transfer, attachment, or injunctive relief); *Connecticut Sav. Bank v. Obenauf,* 59 Conn.App. 351, 758 A.2d 363, 365 (2000) (claim of fraudulent conveyance "could not result in a judgment of liability against the transferee, joint and several or otherwise, on the underlying debt obligations owed by the transferor").  Accordingly, for the reasons discussed above, Appellants' claims for fraudulent conveyance[9] were within the scope of the enforcement jurisdiction of the district court, and the district court erred in dismissing appellants' complaint for lack of subject matter jurisdiction.[10]

---

7.  When viewed in this context, the dicta from *Futura* cited by appellees, "[e]xtending enforcement jurisdiction to factually independent subsequent proceedings will not serve the purpose of judicial efficiency," should be disregarded. *Futura,* 144 F.3d at 9. Efficiency has no bearing on the purpose or scope of enforcement jurisdiction.  The enforcement jurisdiction at issue in this case is distinct from ancillary jurisdiction premised on factual interdependence and is meant to ensure that a federal court will have the power to see its judgments executed, regardless of whether it would be efficient for the federal court to do so.

As the *Futura* court itself noted, "subsequent proceedings based upon defendant's actions occurring after the original proceeding *will necessarily be factually independent* from the primary proceeding." *Id.* at 11 (emphasis added).  To determine that factual interdependence is required for enforcement jurisdiction would destroy it.

8.  Appellants' complaint in the second action requests in the prayers for relief "an alternative order holding Advantix liable for the judgment" and "an order enjoining defendants from disposing of any assets until the obligations owing Plaintiffs have been adjudicated by this Court."  We agree that these requests can be read to go beyond an effort to reach the assets of the judgment debtor.  We do not agree, however, that the fact that appellants requested them changes the nature of the action from that of one for fraudulent conveyance.  Moreover these forms of relief are not available under Connecticut statutory or common law governing fraudulent conveyance actions and could not properly be granted by the Court in any event.  Pursuant to Rule 69(a) of the Federal Rules of Civil Procedure,

[t]he procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution *shall be in accordance with the practice and procedure of the state in which the district court is held,* existing at the time the remedy is sought...."

Fed.R.Civ.P. 69(a) (emphasis added);  *see Dulce v. Dulce,* 233 F.3d 143, 146 (2d Cir.2000).

9.  The parties discuss the fraudulent liens claims as identical in nature to a claim for fraudulent conveyance.

10.  Appellees have recently brought to this Court's attention the fact that appellants have filed a virtually identical lawsuit against the same defendants in California state court.  They argue from this that there is no policy reason for the Connecticut district court to assume jurisdiction over this case because the appellants could have filed and did file their fraudulent conveyance claims in California.  This argument misses the point.  We have not found that the district court has enforcement jurisdiction in this case because the plaintiffs would otherwise be denied a forum.  We recognize that enforcement proceedings such as this one where the parties are not diverse may always be brought in a state court.  Rather, we have held that the district court has enforcement jurisdiction in this case because no

## B. *Collateral Estoppel and Res Judicata*

■ The appellees argue that appellants' claims are barred both by collateral estoppel (issue preclusion) and res judicata (claim preclusion). Collateral estoppel and res judicata are related but distinct doctrines that may bar a party from litigating certain issues or claims in a subsequent proceeding. Both are affirmative defenses. *See Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir.1999).

■ Collateral estoppel "applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *United States v. Hussein*, 178 F.3d 125, 129 (2d Cir.1999) (internal quotation marks and citation omitted).

Accordingly, the question for us is whether or not the issue of ancillary enforcement jurisdiction was actually litigated or actually decided in the district court proceeding. From the record we cannot say that it was. It is clear that the appellants did not plead enforcement jurisdiction in their complaint or amended complaint; they asserted only diversity as the basis for the court's jurisdiction. Nothing in appellants' papers in opposition to the motion to dismiss raises the issue of the district court's enforcement jurisdiction. The lone reference to "supplemental jurisdiction," which appears in their motion for reconsideration, is ambiguous at best.[11] Supplemental jurisdiction can be used to refer to many types of jurisdiction, including the pendent category of ancillary juris-

diction articulated in *Peacock*. Moreover, as the *Peacock* Court noted, when Congress codified much of the common law of ancillary jurisdiction as part of "supplemental jurisdiction" in 28 U.S.C. § 1367, it included the branch of ancillary jurisdiction premised on factual interdependence, but did not codify enforcement jurisdiction. *See* 28 U.S.C. § 1367. Accordingly, a reference to supplemental jurisdiction does not equate to a reference to enforcement jurisdiction.

Furthermore, because the motion was denied by summary order without opinion, we cannot determine whether the issue of the court's enforcement jurisdiction, even assuming it was presented, was decided in the first action. Because the issue of the district court's enforcement jurisdiction was not actually litigated and actually decided in the first action, plaintiffs are not barred by collateral estoppel from raising it in the second action.

■ Having decided that the issue of enforcement jurisdiction was not previously litigated or decided in the first action, we turn to appellees' alternate argument under res judicata. Under the traditional rule of res judicata,

a valid, final judgment, rendered on the merits, constitutes an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand. It operates to bind the parties both as to issues actually litigated and determined in the first suit, and as to those grounds or issues which might have been, but were not, actually raised and decided in that action. The first judgment, when

---

court should be powerless to enforce its own judgment when a defendant fraudulently conveys assets to avoid that judgment. The fact that the defendant conveys them to a nondiverse party should not divest a district court of enforcement jurisdiction. Such a result would encourage judgment debtors to engage in such conduct, not only to avoid payment of the judgment but also to force the winning plaintiff to pursue him to another jurisdiction.

11. Appellants in their motion to reconsider the district court's dismissal of the amended complaint, stated that "[i]n addition, the court should take Supplemental Jurisdiction of the Fraudulent Conveyance and Alter Ego actions." Nor are we persuaded that appellants' citation to *Dunn v. Clarke*, 8 Pet. (33 U.S.) 1, 3, 8 L.Ed. 845 (1834), in their reply brief was clear enough to find that the issue was raised.

final and on the merits, thus puts an end to the whole cause of action.

*Saylor v. Lindsley,* 391 F.2d 965, 968 (2d Cir.1968) (citations omitted).

We begin by noting that the district court's dismissal of the appellants' fraudulent conveyance claim for lack of diversity jurisdiction was not a final decision on the merits of that claim. *See* Fed.R.Civ.P. 41(b). Nonetheless, the appellees argue that because the appellants could have asserted enforcement jurisdiction in the first action, they are barred from asserting it in the second action. To find that appellants were required to assert all possible bases for jurisdiction in the first action or lose them, where there has been no final decision on the merits of the claim, would be unfair.

The policies underlying res judicata reflect the sensible goal that where possible all related claims be resolved in one proceeding. In the present case, in an effort to pursue a unified resolution of their related alter ego and fraudulent conveyance claims, the appellants asserted diversity jurisdiction—the only basis for subject matter jurisdiction that would have effected that result.[12] We endorse the important distinction between on the one hand failing to allege an available jurisdictional ground that would allow unified resolution of all claims, and on the other hand alleging a jurisdictional ground that would allow such unified resolution but which is rejected. *See* Restatement (Second) of Judgments § 26(1)(c) (1982) (preclusion unwarranted where "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of ... restrictions on [courts'] authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action"); 18 Wright, Miller and Cooper, Federal Practice and Procedure, § 4412, at 93 (1981) ("It is clear enough that a litigant should not be penalized for failing to seek unified disposition of matters that could not have been combined in a single proceeding, *and even clearer that no penalty should be inflicted if a deliberate effort to combine such matters has been expressly rejected.*") (emphasis added).

In short, we decline to adopt a rule that would prohibit litigants from pursuing some of their claims on a narrower jurisdictional basis after their attempt to allege a jurisdictional basis that would resolve all of their claims in one proceeding was rejected.

The authority upon which the appellees chiefly rely does not hold to the contrary. In both *Shaver v. F.W. Woolworth Co.,* 840 F.2d 1361 (7th Cir.1988), and *Kale v. Combined Insurance Co. of America,* 924 F.2d 1161 (1st Cir.1991), the plaintiffs obtained final decisions on the merits of federal claims but failed to assert diversity jurisdiction for related state law claims, asserting instead that pendent jurisdiction was appropriate. After the court rejected the federal claims and declined pendent jurisdiction over the state claims, the plaintiffs filed the related claims in state court, the defendants removed on diversity grounds to federal court, and the court dismissed on res judicata grounds.

Had the plaintiffs in those cases pled diversity jurisdiction it would have provided a jurisdictional basis for all of their claims and permitted a unified resolution of those claims, whether based in federal or state law, in the federal court. In such cases, the efficiency concerns of res judicata are, unlike in this case, promoted by barring subsequent actions.

The remainder of the cases cited by appellees involve plaintiffs who sought to relitigate the precise jurisdictional issue decided in the prior proceeding, and are thus inapposite. In *Zoriano Sanchez v. Caribbean Carriers Ltd.,* 552 F.2d 70 (2d

---

**12.** As *Peacock* instructs, appellants could not have pursued a unified resolution of their claims on the basis of the district court's enforcement jurisdiction because appellants' alter ego and veil-piercing claims fall outside the district court's enforcement jurisdiction.

Cir.1977) the District Court for the Southern District of New York had held that plaintiffs were precluded from asserting jurisdiction under the theory that Liberian law permitted the application of general maritime law where plaintiffs had previously brought the same cause of action in district court in Puerto Rico and that court had rejected general maritime jurisdiction. This Circuit affirmed, noting that "[t]he res judicata doctrine ... not only binds the parties and their privies as to grounds or issues actually litigated, but also as to any other admissible matter which might have been offered for that purpose." *Id.* at 72. Since the plaintiffs could have argued that Liberian law supported their claim of general maritime jurisdiction but did not, res judicata applied. Unlike in this case, the plaintiffs in *Zoriano Sanchez* were not advancing a new theory of jurisdiction, but rather offering further support for a jurisdictional theory that had already been considered and rejected. *See Ripperger v. A.C. Allyn & Co.,* 113 F.2d 332 (2d Cir.1940) (plaintiff precluded from relitigating jurisdictional question based on subsequent change of law).

Because the appellants in this case neither failed in the first action to allege a jurisdictional ground that would have permitted a unified resolution of their claims nor seek in the second action to relitigate a jurisdictional issue that has been considered and rejected by the district court, they are not barred by the principles of res judicata from arguing that their fraudulent conveyance claims are within the Court's enforcement jurisdiction.

*Conclusion*

The district court's dismissal of the appellants' fraudulent conveyance action was in error. The judgement appealed from is vacated and the case is remanded for further proceedings consistent with this opinion.