

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-25-2008

# Gambone v. Lite Rock Drywall

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5181

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Gambone v. Lite Rock Drywall" (2008). *2008 Decisions.* Paper 798.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/798

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

—————

NOS.  05-5181 and 05–5284

—————

SALVATORE GAMBONE; SUSAN GAMBONE;
AMERICO MOSCARIELLO; VERA MOSCARIELLO;
VINCENT CANE; BARBARA CANE
Appellees in Nos. 05-5181 and 05-5284

v.

LITE ROCK DRYWALL; ADVANCED
CONSTRUCTION MATERIAL CORPORATION;
JOSEPH LUONGO; THOMAS BOBST;
JOHN P. DUBACK
Advanced Construction Material Corporation
Appellant in No. 05-5181

v.

LITE ROCK DRYWALL; ADVANCED
CONSTRUCTION MATERIAL CORPORATION;
JOSEPH LUONGO; THOMAS BOBST;
JOHN P. DUBACH; JAMES NICHOLLS;
ROBERT HILDRETH and
INNOVATIVE TECHNOLOGIES ENTERPRISES CORP.*
James Nicholls, Robert Hildreth and
Innovative Technologies Enterprises Corp.*
Appellants in No. 05-5284

(*Dismissed Per Clerk's Order Dated 2/8/06)

—————

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 01-cv-01071)
District Judge: Hon. Robert F. Kelly

————————

Argued May 8, 2008

BEFORE: BARRY and STAPLETON, *Circuit Judges*,
and RESTANI,* *Judge*

(Opinion Filed: July 25, 2008)

————————

James J. Oliver
Oliver, Caiola & Gowen
2500 DeKalb Pike - Suite 100
East Norriton, PA 19401
 and
Kevin W. Mahoney (Argued)
17 Bentwood Drive
Bordentown, NJ 08505
  Attorneys for Appellees in Nos. 05-5181 and 05-5284

Shawn J. Lau (Argued)
Lau & Associates
4228 St. Lawrence Avenue
Reading, PA 19606
  Attorney for Advanced Construction Material Corporation, Appellant in No. 05-5181

Sharon L. Gray (Argued)
906 Penn Avenue
Wyomissing, PA 19610
  Attorney for Appellants Nicholls and Hildreth in No. 05-5284

——————————

* Hon. Jane A. Restani, Chief Judge, United States Court of International Trade, sitting
by designation.

OPINION OF THE COURT

STAPLETON, Circuit Judge:

This appeal arises from post-judgment proceedings in the District Court and presents the issue of whether that Court properly exercised its ancillary jurisdiction to preliminarily enjoin appellants from transferring assets they received in an allegedly fraudulent transfer. We hold that the District Court did not err.

I.

Plaintiffs/Appellees ("Planitiffs") secured a judgment against Advanced Construction Materials Corp. ("ACMC") and its founder, Joseph Luongo, in this securities fraud case. Through post-judgment discovery, they uncovered evidence tending to show that Luongo and ACMC had engaged in a pattern of transferring ACMC's assets for no value in order to thwart plaintiffs' recovery on their judgment. This pattern included the transfer without consideration of certain patents from ACMC to Innovative Technologies Enterprises Corp. ("IT"), a British Virgin Islands corporation which is owned by James Nicholls and Robert Hildrith, a former ACMC board member. Nicholls, like plaintiffs, is a resident of Pennsylvania.

Plaintiffs promptly filed a "Motion for Proceedings Supplementary, Preliminary

Injunctive Relief, and for Leave to File Complaint for Fraudulent Transfer Impleading Third-Party Defendants" (hereafter "Motion for Proceedings Supplementary"). This motion sought to implead IT, James Nicholls and Robert Hildreth (hereafter the "Transferees") and to restrain further transfer of the patents. Attached was a certificate of counsel setting forth the evidence supporting the motion. Copies of these documents were sent by first class mail to ACMC, James Nicholls and Robert Hildreth on September 15, 2005.

On September 30, 2005, Nicholls filed a motion for a protective order opposing the Motion for Proceedings Supplementary and seeking a stay of all proceedings until 90 days following service of process on him. On the same day, Hildreth filed a "Response" to the Motion for Proceedings Supplementary opposing that motion and seeking an extension of time to file a full response until December 29, 2005.

On October 5, 2005, the District Court entered an order temporarily restraining the Transferees from transferring the patents and scheduling a hearing on the motion for a preliminary injunction and the application to implead the Transferres for 9:00 A.M. on October 15, 2005. Copies of this order were mailed and e-mailed by the clerk to the Transferees. This hearing was continued at the request of ACMC until October 31, 2005. Prior to that hearing, Nicholls filed a "Motion to Dismiss" the Motion for Proceedings Supplementary.

Nicholls was present at the October 31, 2005, hearing and testified. At the

conclusion of the testimony, the District Court made oral findings and granted a preliminary injunction. Shortly thereafter, the District Court granted the motion for leave to file the complaint for fraudulent transfer and filed a memorandum further explaining the basis for the preliminary injunction.

In its memorandum, the District Court concluded that it had ancillary jurisdiction to enter the preliminary injunction sought. It found, primarily on the basis of Nicholls' testimony, that Luongo and ACMC had engaged in a pattern of transfers of ACMC's assets for no value in order to defeat the creditors in this case, that this included the transfer of 15 patents to IT for no consideration, and that ACMC had been insolvent at the time it transferred these patents to IT. The District Court concluded that the plaintiffs were likely to succeed on their fraudulent transfer claims and that they would suffer irreparable injury if the preliminary injunction were not granted. ACMC and the Transferees then filed this timely appeal.

On February 8, 2006, IT's appeal was terminated for procedural default.

The ultimate issue for resolution in this appeal is whether the District Court acted properly on October 31, 2005, when it entered the preliminary injunction it did against Nicholls and Hildreth. This requires us to determine whether the District Court had subject matter jurisdiction to enter the injunction and, if so, whether it was otherwise appropriate to do so. This ultimate issue does not require or permit us to pass upon the propriety or effectiveness of anything occurring after October 31, 2005. Accordingly, we

decline the appellees' invitation to pass on the validity of plaintiffs' efforts to serve the Transferees with the third party complaint.

II.

Turning first to subject matter jurisdiction, it is true that federal courts are courts of limited jurisdiction, and therefore are generally precluded from hearing matters that do not involve a federal question or diverse parties. However, this rule is subject to exceptions, the relevant one here being ancillary jurisdiction permitting District Courts to retain jurisdiction over post-judgment enforcement proceedings. *Cf.* THE JUDICIAL IMPROVEMENTS ACT OF 1990, codified at 28 U.S.C. § 1367. As the Supreme Court explained:

> That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled. And this, irrespective of whether the court would have jurisdiction if the proceeding were an original one. The proceeding being ancillary and dependent, the jurisdiction of the court follows that of the original cause, and may be maintained without regard to the citizenship of the parties or the amount involved.

*Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934) (citations omitted). Or more colloquially, ancillary jurisdiction lets prevailing litigants go to the District Court that entered their judgment for help in resolving matters related to its enforcement. Accordingly, so long as the plaintiffs' demand for injunctive relief qualifies as a post-judgment enforcement proceeding, which is a proceeding that functions as a means for executing a judgement, the District Court has subject matter jurisdiction. *See, e.g., IFC*

6

*Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 315 (3d Cir. 2006); *Thomas, Head & Greisen Employees Trust v. Buster*, 95 F.3d 1449, 1453-54 (9th Cir. 1996).

The Transferees cite *Peacock v. Thomas*, 516 U.S. 349, 357-58 (1966), in an effort to argue that the proceedings surrounding the plaintiffs' request for a preliminary injunction cannot be so characterized, and therefore that the District Court's activities went beyond its ancillary jurisdiction.

In *Peacock*, the Supreme Court held that a motion to pierce the corporate veil was not an enforcement proceeding, and thus could not be entertained by the District Court absent some independent basis for federal jurisdiction. *Id.* In reaching this conclusion, the Court explained that ancillary jurisdiction was not intended for use as a tool for establishing personal liability on the part of a new defendant, for instance by designating that third party as an alter ego of the indebted party or by piercing the corporate veil. *Id.* At the same time, however, the Supreme Court reiterated the propriety of traditional ancillary jurisdiction, citing with approval previous cases providing garnishment, attachment, mandamus and prejudgment avoidance of fraudulent conveyances in order to demonstrate that enforcement jurisdiction encompasses "a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments." *Id.* at 356-57.

The Transferees here argue that "[t]he Fraudulent Transfer Complaint advanced by

the Plaintiffs presents a new legal theory of fraud allegedly perpetrated by IT and its officers, similar to piercing a corporate veil, or alter ego claim, not raised in the original litigation with ACMC." (Transferees' Br. at 18.) Nothing in *Peacock*, however, precludes ancillary jurisdiction over suits involving assets already subject to the judgment; it only bars the exercise of ancillary jurisdiction over attempts to impose personal liability for an existing judgment on a new party. 516 U.S. at 357-58. In short, *Peacock* holds that ancillary jurisdiction does not extend to suits demanding that a third party use its legitimately held assets to satisfy a previously rendered judgment. *Id*. In arriving at this conclusion, we join three of our sister Courts of Appeals who have reached a similar conclusion. *See, e.g.*, *Epperson v. Entertainment Express, Inc.,* 242 F.3d 100, 106 n.6 (2d Cir. 2001) (noting that the "important distinction is not whether the claim is brought in a second action but whether it seeks to impose liability for the underlying judgment on a new party."); *USI Properties Corp. v. M.D. Const. Co.*, 230 F.3d 489, 498 (1st Cir. 2000) (explaining that *Peacock* drew "a distinction between postjudgment proceedings that simply present a mode of execution to collect an existing judgment and proceedings that raise an independent controversy with a new party, attempting to shift liability."); *Thomas, Head & Greisen Employees Trust*, 95 F.3d at 1454-55 (*Peacock*'s analysis turns on "whether it seeks . . . to establish liability on the part of the third party.").

Plaintiffs' fraudulent conveyance claim does not seek to impose personal liability

on the Transferees.  Rather, the relief they seek is solely to corral ACMC's assets in an effort to preserve their access to them.  Accordingly, we conclude that the District Court had ancillary jurisdiction to enter its October 31, 2005, preliminary injunction.[1]

### III.

We next consider the District Court's exercise of personal jurisdiction in light of the Transferees' argument that they "lack sufficient minimum contacts with the Eastern District of Pennsylvania," and thus find litigating there to be "unfair," and "substantially burdensome."  (Reply Br. 9-10.)  Because Pennsylvania's long arm statute provides for jurisdiction "to the fullest extent allowed under the Constitution," our inquiry turns on whether the transferee's constitutional rights were violated when they were hailed into the District Court.  42 PA. CONS. STAT. ANN. § 5322(b).

On one hand, we do not find that any rights were violated in Nicholls's case because he "does reside in York, Pennsylvania," and therefore is plainly subject to the

---

[1]We pause briefly to resolve any tension between this ruling and our prior ruling in *IFC Interconsult, AG v. Safeguard Intern. Partners*, where, in the context of a garnishment action permitted under Rule 69, we said, "Our reading of *Peacock* comports with the jurisprudence of the Seventh Circuit."  438 F.3d 298, 313 (3d Cir. 2006).  Although the Transferees argue that this means we adopted the logic of the Seventh Circuit's unpublished opinion in *Galuska v. Geoquest, Inc.*, No. 98-1892, 1998 WL 879510 at *1 (7th Cir., Dec. 9, 1998), this reading is untenable given the context in which the statement was made.  *IFC* makes it clear that this comment was referring to the Seventh Circuit's opinion in *Argento v. Melrose Park*, 838 F.2d 1483 (7th Cir. 1988), which permitted the District Court to exercise jurisdiction over garnishment proceedings.  The *IFC* opinion did not mention *Galuska*, or suggest that this Court was contemplating adopting its logic.  Accordingly, we see no tension between the instant ruling and *IFC*.

District Court's jurisdiction. (Supp. App. at 5.)

On the other hand, the District Court's exercise over Hildreth requires a more detailed analysis. Hildreth correctly argues that since he is not a Pennsylvania resident, any exercise of personal jurisdiction over him must comport with *International Shoe* and its progeny, prohibiting the exercise of *in personam* jurisdiction over non-resident defendants absent their having "minimum contacts" such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Accepting, as we must for present purposes, that Hildreth was a party to a fraudulent conveyance, we must determine if, by engaging in this sham transaction, Hildreth established the requisite minimum contacts. *See, e.g.*, *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). It is well-settled that a defendant "committ[ing] an intentional tort outside the forum, the unique effects of which caused damage to the plaintiff within the forum," has established such contacts. *IMO Indus. Inc. v. Kiekert AG*, 155 F.3d 254, 256 (3d Cir. 1998) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). In *IMO*, we held that three factors needed to be considered in determining whether personal jurisdiction under this theory was proper:

> First, the defendant must have committed an intentional tort. Second, the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort. Third, the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

10

Here, Hildreth (1) participated in a fraudulent conveyance, which is a species of the intentional tort of fraud, (2) for the purpose of preventing the plaintiffs, who are Pennsylvania creditors, from collecting on a judgment rendered in their favor by a court in Pennsylvania, (3) and thus "expressly aimed" his conduct at the forum. *Id.* This was sufficient to subject Hildreth to the personal jurisdiction of the District Court.

It is true, as the Transferees stress, that Nicholls and Hildreth had not been served with the Third Party Complaint at the time the preliminary injunction was issued. However, (1) each of them had received copies of the Motion for Proceedings Supplemental and thus had actual notice of the application for preliminary relief and the basis therefor; (2) each had filed responses to that motion and indicated an intent to litigate the subject matter of that Motion before the District Court; (3) each was afforded an opportunity to oppose the entry of preliminary relief; (4) the District Court was confronted with an exigent situation in which avoidance of serious and irreparable injury to plaintiffs depended on it providing preliminary relief as soon as possible; and (5) both Transferees appeared to be readily amenable to service of process. Under these circumstances, we hold that it was within the discretion of the District Court to enter the October 31st preliminary injunction prior to formal service of process in anticipation that service would promptly follow.[2]

---

[2] In so holding, we express no opinion on the issue of whether that preliminary injunction was or is enforceable against a transferee who had not been served with process at the time of any alleged violation.

IV.

We will affirm the District Court's preliminary injunction order of October 31, 2005.