**C.G. HOLDINGS, INC., Plaintiff,**

v.

**RUM JUNGLE, INC., Defendant.**

**No. 07–MC–534 (ENV)(MDG).**

United States District Court,
E.D. New York.

Oct. 23, 2008.

Steven A. Gibson, Clary Gibson Lowry LLP, Las Vegas, NV, for Plaintiff.

Matthew Wright Carlin, Donovan & Yee, Kevin Patrick Claffey, New York, NY, for Defendant.

### MEMORANDUM AND ORDER

VITALIANO, District Judge.

### BACKGROUND

In July 2007, plaintiff C.G. Holdings, Inc. ("C.G. Holdings") initiated an action in the United States District Court for the District of Nevada against defendant Rum Jungle, Inc., ("Rum Jungle") alleging violations of the Lanham Act. Rum Jungle failed to appear in the Nevada action and a default judgment was entered against it on November 2, 2007. The judgment awarded C.G. Holdings the following relief: (1) statutory damages in the amount of $100,000; (2) attorneys' fees and costs in the amount of $26,360.19; and (3) a permanent injunction enjoining Rum Jungle from using the RUMJUNGLE mark and/or any similar variation.

On December 21, 2007, C.G. Holdings sought to enforce the Nevada judgment against Rum Jungle in this Court. The filing was followed by a flurry of activity, including a parade of representatives and lawyers for defendant, cessation of use of the RumJungle mark by defendant, the closure of an infringing website, and the discovery of other individuals and business entities involved in the premises where defendant had operated a night club. On July 31, 2008, C.G. Holdings moved against one of these other entities when it sought to enforce the Nevada judgment against nonparty J.M.C. Entertainment, Inc. ("JMC") on a veil-piercing and alter-ego theory of liability. JMC defended with a cross motion to exempt it from enforcement of the Nevada judgment. For the reasons set forth below, this Court grants JMC's motion to exempt it from the judgment and denies C.G. Holding's motion to enforce the judgment against JMC. Otherwise, C.G. Holdings' motion to enforce its judgment against Rum Jungle is granted and plaintiff may submit a proposed Order for such enforcement.

### DISCUSSION

Because C.G. Holdings seeks to hold a party neither named in the foreign judgment, nor previously found liable on that judgment, nor ever a party to the foreign action in which the judgment was entered,

the ancillary jurisdiction of this Court is implicated and the result is controlled by *Peacock v. Thomas,* 516 U.S. 349, 351, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996), and the Second Circuit's application of *Peacock* in *Epperson v. Entertainment Express Inc.,* 242 F.3d 100 (2d Cir.2001). Informed by *Peacock* and *Epperson,* ancillary jurisdiction over JMC is wanting.

## I. The Legal Framework

### A. *Peacock*

▆▆▆ The black letter rule of *Peacock* is that, in the ordinary case, district courts cannot exercise ancillary jurisdiction over new and independent actions brought by a federal judgment creditor to impose liability for a money judgment on a person not otherwise already found liable for it. *Peacock,* 516 U.S. at 351, 116 S.Ct. 862. That is, district courts cannot ordinarily exercise ancillary jurisdiction over a new lawsuit to impose liability on a third party, except 1) to allow a single court to resolve factually interdependent claims or 2) to allow a court to effectuate its own decrees. *Id.* at 351, 354, 116 S.Ct. 862.

In *Peacock,* Thomas sued his employer, Tru-tech, and Peacock, an officer and shareholder of Tru-tech, claiming pension benefits under ERISA. *Id.* at 351–52, 116 S.Ct. 862. The district court held Tru-tech liable for breaching its fiduciary duty to Thomas but found that Peacock was not a fiduciary. As a result, judgment was entered against Tru-tech only, which was affirmed by the Fourth Circuit. While the case was on appeal, Peacock settled Tru-tech's accounts with creditors, a class which included Peacock himself. After attempting to enforce the judgment against

Tru-tech without success, Thomas sued Peacock in the same federal district court that had awarded him the original judgment, asserting fraudulent conveyance and veil-piercing claims. *Id.* The court entered judgment against Peacock for the amount owed Thomas by Tru-tech. The court of appeals affirmed. *Id.*

The Supreme Court overturned the circuit decision, finding that the district court lacked ancillary jurisdiction over Thomas' subsequent suit to enforce the judgment against Peacock. *Id.* at 360, 116 S.Ct. 862. Thomas's post-judgment claims, the Court found, involved new theories of liability that had little to no connection to the ERISA case. *Id.* at 359, 116 S.Ct. 862. The *Peacock* Court emphasized: "We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357, 116 S.Ct. 862.[1]

### B. *Epperson*

*Epperson* is the seminal case in the Second Circuit interpreting *Peacock.* In *Epperson,* judgment creditors filed a diversity action in district court seeking damages for breach of contract and an unpaid account against Hill Arts and Entertainment Systems, Inc ("HAESI"). *Epperson,* 242 F.3d at 102. The creditors would later discover that HAESI had sold substantially all its assets to Entertainment Express, Inc. *Id.* In the meanwhile, upon HAESI failing to appear and comply with the district court's discovery orders, default judgment was entered against it. The judgment creditors then amended the

---

1. The district court in *Peacock* awarded judgment to Thomas on the basis of alter-ego liability. *Peacock,* 516 U.S. at 352, 116 S.Ct. 862. In reviewing the opinions of the district court and the Fourth Circuit, the *Peacock* Court declined to address or infer a fraudu-
lent conveyance claim, instead finding that neither Thomas nor the courts had characterized the action as an attempt to void a fraudulent conveyance. *See id.* at 357 n. 6, 116 S.Ct. 862.

complaint in the first action to add three new defendants, a fraudulent conveyance claim, and alter-ego claims. *Id.* at 103. The action was later dismissed for lack of subject matter jurisdiction once diversity was destroyed. *Id.* A second action was then filed in the same district court with the same fraudulent conveyance claim, but critically, the alter ego claim was not joined. Instead, the alter-ego claim was brought in state court. *Id.* The district court dismissed the second action nonetheless for lack of subject matter jurisdiction over the fraudulent conveyance claim, citing *Peacock.* *Id.* Although the Second Circuit reversed the district court's decision, finding that fraudulent conveyance claims were within the scope of a district court's ancillary jurisdiction[2], it notably observed that such jurisdiction did not extend to actions by a creditor to establish a third party's independent liability. *Id.* at 105, 107. In this latter situation, through which veil-piercing and alter-ego theories of liability are implicated, "a new defendant may not be haled into federal court." *Id.* at 104. Instead, an independent basis for federal jurisdiction must be properly pled in order to entertain such claims. *Id.* at 105–06 ("Since *Peacock*, most courts have continued to draw a distinction between post-judgment proceedings to collect an existing judgment and proceedings, such as alter ego liability and veil-piercing,

that raise an independent controversy with a new party in an effort to shift liability.")

## II. C.G. Holdings' Alter Ego and Veil-piercing Claims

■ As *Peacock* and *Epperson* make clear, in order for a district court to entertain an alter-ego or veil-piercing claim, an independent basis for jurisdiction must be established. *See, e.g. Careccia v. Macrae,* 2005 WL 1711156 at *4 (E.D.N.Y.2005) (applying *Epperson* ). Therefore, courts in this circuit have found that enforcement of a judgment against a third party that is predicated on alter-ego and veil-piercing theories falls outside the ancillary jurisdiction of the court. *See Estate of Yaron Ungar v. Orascom Telecom Holding S.A.E.,* 578 F.Supp.2d 536, 548, 550, 2008 WL 4272834 at *11, 13 (S.D.N.Y.2008) (finding that because the second action required an alter-ego and veil-piercing determination that was not part of the first action, the Court lacked subject matter jurisdiction); *Knox v. Orascom Telecom Holding S.A.E.,* 477 F.Supp.2d. 642, 647 (S.D.N.Y.2007) ("The more fundamental problem with finding that the Court's enforcement jurisdiction extends over Orascom in this action is that . . . once the Court is required to engage in a veil-piercing or alter ego analysis . . . an inde-

---

2. C.G. Holdings makes no claim here that JMC is the illegitimate transferee of Defendants assets. Memorandum of Law in Support of Plaintiffs Surreply at 2 [hereinafter Plaintiffs Surreply]. Assuming it could aver the facts essential to such a claim, a plethora of possibilities become available to plaintiff. Indeed, New York law, *see* CPLR § 5225(b) or § 5227, would allow C.G. Holdings to pursue collection of its judgment against JMC as a third person to whom the judgment debtors assets had been fraudulently conveyed. *See Aaron v. Mattikow,* 225 F.R.D. 407, 412 n. 2 (E.D.N.Y.2004). Moreover, even as an independent claim, diversity jurisdiction could likely be invoked over JMC in this Court.

Coyly, C.G. Holdings indicates its willingness to request such a proceeding if the Court finds it necessary to do so. Plaintiffs Surreply at 7. The Court, however, will simply not infer a fraudulent conveyance claim without a pleading specifying the alleged fraudulent acts upon which the claim is based. *See Epperson,* 242 F.3d at 105 (discussing *Peacock,* 516 U.S. at 357 n. 6, 116 S.Ct. 862, and stating that the *Peacock* Court refused to characterize the lawsuit [filed by Thomas] as a fraudulent conveyance action since neither Thomas nor the lower courts characterized the suit in that way). Thus, ancillary jurisdiction here cannot be supported on that ground.

pendent basis for jurisdiction is required.").

■ Plaintiff at first rested its judgment enforcement claim against JMC on the very argument that JMC violated the Lanham Act because it was Rum Jungle's alter-ego, and that this claim against JMC is factually interdependent on the Lanham Act claims that were before the district court in Nevada. Plaintiff's argument for enforcement of its foreign judgment in this Court against a third party simply does not square with *Peacock* and *Epperson.*

When the smoke clears, moreover, it is evident that C.G. Holdings is indeed attempting to hold JMC liable by asserting causes of actions against JMC that are distinct from the underlying Lanham Act claims that were filed in Nevada against Rum Jungle only and which were the basis for the default judgment it seeks to enforce in this action. Although C.G. Holdings now apparently disavows in this action any alter-ego and veil-piercing claims it may have against JMC, its pleadings and argument are otherwise bare as to precisely on what basis JMC should be held liable for a judgment in which it was not named and was entered in an action to which it was not a party.[3]

C.G. Holdings intimates belatedly that JMC also committed Lanham Act violations but does so in such a way that, despite its disavowal, clearly demonstrates

that it is still pursuing judgment enforcement against JMC under an alter-ego theory of liability. In such circumstances, under *Peacock,* JMC's culpability cannot be resolved as an ancillary matter in this proceeding. *See Knox,* 477 F.Supp.2d at 647 (citing *Futura Dev. of Puerto Rico, Inc. v. Estado Libre Asociado de Puerto Rico,* 144 F.3d 7, 12 (1st Cir.1998)) ("Plaintiff's assertions would require this Court to 'treat the corporate form ... as a complete nullity—to look through its legal identity to the party standing behind it—and to do so under the guise of making a factual determination necessary to determine [this Court's] subject matter jurisdiction over this case."). Simply put, regardless plaintiff's peek-a-boo flirtation with the alter ego theory of liability, there is little doubt that its argument for enforcement of the Rum Jungle judgment against JMC must be analyzed on the basis of a corporate disregard theory, and, under *Peacock* and *Epperson,* found wanting.[4]

Finally, and very importantly, though not pressing potential fraudulent conveyance or alter-ego theories in this action, it should be noted that C.G. Holdings is not remediless in its apparent dispute with JMC. Nothing prevents it from initiating a separate action in this Court against JMC, if it can allege (as it probably can) an independent basis of jurisdiction, or even a special proceeding in New York state

---

3. It bears repeating that plaintiff's complaint in this action presents no Lanham Act claims whatsoever. This is solely an action to enforce a foreign judgment; the facts and law undergirding that judgment are not to be, and have not been, relitigated here.

4. For example, in opposition to JMC's motion to exempt JMC from enforcement of the judgment, plaintiff's brief clearly asserted veil-piercing and alter-ego claims and alleged facts that are routinely found in corporate disregard claims. *See* Brief for the Plaintiff at 3–7. On October 3, 2008, plaintiff then submitted its surreply again establishing that it

sought to hold JMC responsible on an alter-ego theory of liability. *See* Plaintiff's Surreply at 1 ("JMC was responsible for [the] infringement of Plaintiff's service mark, and was the *alter ego* of [Rum Jungle, Inc.] with respect to such infringement") (emphasis added). Finally, at the motion hearing held on October 10, 2008, plaintiff's counsel reiterated these assertions. Transcript of Motion Hearing at 4, *Rum Jungle,* No. 07–MC–534 (claiming that this Court had ancillary jurisdiction "over anyone that [C.G. Holdings] would want to pierce the corporate veil ... where Rum Jungle acted as the agent on").

court, pursuant to CPLR § 5225(b) or § 5227,[5] to pursue either a fraudulent conveyance claim or to pierce the corporate veil and establish alter-ego liability. Perhaps it can even state a direct Lanham Act claim in this Court against JMC. *See Knox*, 477 F.Supp.2d. at 648 n. 5 (describing means through which jurisdictional hurdles posed by *Peacock* could be overcome by plaintiffs). The only relief C.G. Holdings cannot seek to obtain is the relief it demands, that is to hold a third party, JMC, liable for a default judgment it entered against Rum Jungle through the action it commenced here solely against Rum Jungle to enforce that Nevada judgment. To cut to the quick, the ancillary jurisdiction of this Court cannot be used to call JMC to account for the Nevada judgment absent, at least, a pleading and specific allegations of facts supporting a claim of fraudulent conveyance by Rum Jungle to JMC.[6] *See Epperson*, 242 F.3d at 106. On its motion to enforce against JMC, C.G. Holdings offers neither.

### CONCLUSION

For the foregoing reasons, JMC's cross motion to exempt JMC from enforcement against it of the Rum Jungle judgment is granted and, correspondingly, C.G. Holdings' motion to enforce that judgment against JMC is denied. C.G. Holdings' motion to enforce its judgment against Rum Jungle, Inc. is granted and C.G. Holdings may submit a proposed order to that effect. Further, this Order is, of course, without prejudice to the right of

C.G. Holdings to proceed directly against JMC on any claim it believes it can bring in good faith in this or any other federal or state court it can establish has appropriate subject matter and *in personam* jurisdiction.

SO ORDERED.

---

**5.** *See supra* note 1.

**6.** There is, however, a further word of caution. *Peacock* and *Epperson* do not make clear whether ancillary jurisdiction could be stretched to include consideration of a fraudulent conveyance claim by a court other than the one that entered the original judgment, which, in this case, would be the United States District Court for the District of Neva-

da. With the original Lanham Act claim not pending here, there are also no questions pending here that would be factually interdependent—the foundational basis for the relevant *Peacock* exception—with a contention by plaintiff that Rum Jungle had fraudulently conveyed assets to JMC. But, since no fraudulent conveyance claim by plaintiff is currently before this Court, neither is the issue of a potential ancillary jurisdiction lacuna.